No. 24887

**The People of the State of Colorado v. Matthew Ross**
(500 P.2d 127)

Decided August 21, 1972.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavaliere, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Randolph M. Karsh, Deputy, Kenneth J. Russell, Assistant, Lee Belstock, Assistant, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Defendant-appellant, Matthew Ross, seeks to reverse his convictions of aggravated robbery and conspiracy to commit aggravated robbery. We affirm the convictions.

In the early morning of September 14, 1969, one John Keeley was returning to his home by automobile when he was hailed to the curb by two men and a woman who apparently were having car trouble. They asked him for a ride to obtain another car. Agreeing to assist them, Keeley drove them toward their destination, when the man sitting next to him drew a gun and demanded Keeley's possessions. Complying with this order, Keeley stopped his car. Thereupon, the robbers took his wallet and other personal items. Keeley pleaded that he be allowed to keep his identification papers. The gunman, later identified as appellant Ross, answered: "Shut up or I'll shoot you." The robbers then fled in Keeley's automobile.

Complaint was made to the Denver police and Keeley was asked to examine police photographs of Negro males between the age of twenty-five and thirty-five years. After he had looked at some three to four hundred pictures, he picked that of appellant Ross as the gunman.

Approximately two weeks later, Keeley attended a lineup composed of six Negro males of approximately the same age group. He identified appellant as the robber who held the gun on him. A member of the public defender's staff was present, observing the lineup procedures, having previously advised and consulted with appellant.

At the trial, an extensive *in camera* hearing was held to determine the admissibility of the victim's in-court identifica-

tion. The court found that no impermissible procedures occurred at the photographic inspection or the lineup which would taint the victim's in-court identifications, and concluded that appellant had not been denied due process of law in this regard. Appellant's motion to suppress the identification evidence was denied and the jury was permitted to consider and weigh such evidence, bringing in a verdict of guilty as to both charges.

## I.

Appellant's first claim of error is that the out-of-court pretrial identifications were so unnecessarily suggestive and conducive to irreparable mistaken in-court identification that he was denied due process of law, citing in support thereof *Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199. Appellant makes no claim that the out-of-court identifications violated the principles of *United States v. Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149, or *Gilbert v. California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178.

We find no merit to appellant's claim of denial of due process. In *Phillips v. People,* 170 Colo. 520, 462 P.2d 594, this Court delineated the due process test as applied to pretrial identifications, as follows:

"The test set forth by Supreme Court in *Stovall v. Denno, supra* whereby an out-of-court identification of the defendant is measured against due process of law is to ask whether the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law. The answer to this question depends on the totality of the circumstances surrounding the confrontation.

"In the opinion of this court, the police procedures which led to the identification of the defendant by the complaining witness were not so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law. It was first established that the complaining witness got a good look at the man who held him up in broad daylight. The police showed the witness

numerous pictures of Negro males, and the witness selected the defendant's picture from all of the others even though the picture he saw did not reveal a scar which the defenant has on one side of his face. The circumstances surrounding this identification are similar to those in *Simmons v. United States, supra* where the Supreme Court held that a photo identification of the defendant was not a denial of due process of law."

In the instant case, the trial court's conclusion that the totality of circumstances surrounding the out-of-court identifications did not sustain appellant's contention of irreparable mistaken in-court identification is amply supported by the record. A mention of the following circumstances will illustrate the validity of this conclusion.

Keeley, the victim, had had considerable experience working in the black community. He had seen appellant before the robbery transaction involved in this case, having occasion to encounter him socially, face to face. The gunman sat next to Keeley in the auto for several minutes while he drove a considerable distance over the Denver streets. Keeley had ample opportunity to look at the gunman face to face. In his own words, "I'll never forget a man who points a gun at me." At the photographic display, he had no hesitancy in identifying appellant as the gunman, from a display containing an estimated three to four hundred photographs. At the lineup he immediately and unhesitatingly recognized appellant as the gunman. The trial court properly denied the motion to suppress the identification evidence and the jury's verdict was amply supported by the record.

## II.

The second claim for reversal is that the trial court erred in failing to instruct the jury on simply robbery as a lesser included offense. We find no merit to this claim.

The general rule, that an instruction on a lesser included offense is required when requested, is limited to those cases where there is evidence to support such an instruction. Here, there was no evidence to support an instruction on simple robbery.

■ The defendant was charged under 1967 Perm. Supp., C.R.S. 1963, 40-5-1(2)(c), which provides that an offense of aggravated robbery occurs if in perpetration of a robbery the defendant "* * * by use of force, threats or intimidation with a weapon puts the person robbed or any other person in reasonable fear of death or bodily injury * * *." Here, all of the evidence supported the charge of aggravated robbery: the use of a gun; the threat to shoot Keeley; and the reasonable fear of death or bodily injury, as expressed in the victim's own words — "Because I was afraid I would be shot or bodily hurt, or something. I was scared." Appellant testified, but he simply denied that he committed the robbery. He did not dispute the evidence that an aggravated robbery occurred; rather, he simply disclaimed any participation in the robbery. *Lucero v. People,* 161 Colo. 568, 423 P.2d 577.

### III.

■ Lastly, appellant assigns error to the court's failure to give his tendered instruction on identification. The record shows that the court instructed generally on credibility of the witnesses. In *Fresquez v. People,* 178 Colo. 220, 497 P.2d 1246, and in *McLean v. People,* 172 Colo. 338, 473 P.2d 715, we held it was not error to deny a special instruction on credibility of eyewitnesses where a general instruction on credibility was given. Additionally, the court here specifically instructed on the matter of identification, although not in the language of appellant's tendered instruction. This in our view amply afforded the appellant the added protection which he sought by his tendered instruction. We find no abuse of discretion under these circumstances in the denial of appellant's tendered identification instruction.

The judgment is affirmed.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON not participating.