The **PEOPLE** of the State of Colorado, Petitioner,

v.

Derek L. **MONROE**, Respondent.

No. 95SC485.

Supreme Court of Colorado, En Banc.

Sept. 23, 1996.

As Modified Oct. 9, 1996.

Gale A. Norton, Attorney General, Timothy M. Tymkovich, Solicitor General, John Daniel Dailey, Deputy Attorney General, Denver, for Petitioner.

Patrick J. Mulligan, Denver, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted the People's cross-petition for certiorari review[1] of that portion of *People v. Monroe,* 907 P.2d 690 (Colo.App.1995), holding that in criminal proceedings a witness's in-court identification testimony must be based on prior independent observations of the defendant even where the witness has not participated in a pretrial identification procedure. We disapprove of the court of appeals analysis of this issue based on *People v. Walker,* 666 P.2d 113 (Colo.1983).

Defendant Derek Monroe (Monroe) was convicted of four counts of first degree attempted murder, § 18–3–101, 8B C.R.S. (1986); three counts of first degree assault, § 18–3–202, 8B C.R.S. (1986); second degree assault, § 18–3–203, 8B C.R.S. (1986); second degree forgery, § 18–5–103, 8B C.R.S. (1986); criminal impersonation, § 18–5–113, 8B C.R.S. (1986); and numerous counts of mandatory sentencing for a crime of violence, § 16–11–309, 8A C.R.S. (1986). On appeal, Monroe's judgment of conviction was upheld by the court of appeals, and we refused certiorari except for the in-court identification question.

The People contend that the court of appeals incorrectly adopted a *per se* rule of impermissible suggestiveness regarding first-time in-court identification testimony, erroneously imposing upon the prosecution a burden to prove by clear and convincing evidence that the witness called to testify has an independent source for the identification. We agree, and disapprove the expansion of *People v. Walker* expressed by the court of appeals.

I.

Monroe was convicted of crimes resulting from an argument at a basketball game in Aurora on the evening of July 8, 1992, at Del Mar Park. After the basketball game, Monroe and his companion, Cedric Turner, returned to their automobile. The argument continued as some of the basketball players passed the automobile. Monroe retrieved and began firing an automatic weapon. Three persons who had been at the basketball court, Manchelle England, Ladale Goodlow, and Victor Garmes, were shot; all survived.

That evening, Malcolm Thomas, one of the basketball players who escaped being shot, was shown a photographic lineup at the Aurora Police Department which did not include

---

**1.** We denied the defendant's petition for certiorari review of seven assignments of error as to the court of appeals decision affirming the judgment of conviction. We granted the People's cross-petition for certiorari on the following issue: Whether the prosecution must prove by clear and convincing evidence that a witness's in-court identification testimony is based on prior independent observations of the defendant, even where the witness has not participated in a pretrial identification procedure.

Monroe or Turner. No identification was made. Later in the evening, after looking at a Montbello class photograph, Thomas called Aurora police to report his belief that Turner was the companion of the person who did the shooting.

Four days later, on July 12, 1992, Thomas saw Turner and the assailant at a skating rink in Thornton. When Monroe was thereafter arrested, he presented police with a false driver's license, but subsequent investigation revealed his true identity.

On July 13, 1992, Aurora police visited victim Goodlow in the hospital. Upon being shown two photographic lineups, Goodlow positively identified Monroe as his assailant. After England was released from the hospital, he identified Monroe through a photographic lineup as the individual who had shot him.

Prior to trial, counsel for Monroe filed a notice of alibi and a motion to suppress all identifications. At trial, Monroe maintained his mistaken identity defense. Thomas, England, and Goodlow identified Monroe as the shooter. Garmes testified that he could not identify his assailant.

For the purpose of additional identification testimony, the prosecution called to the stand another of the basketball players, Brady Crenshaw, who had not been involved in any pretrial identification procedure. Monroe's counsel then requested and received an *in camera* evidentiary hearing at which Crenshaw confronted and identified Monroe. As a result of Crenshaw's *in camera* testimony, the trial court ruled that Crenshaw had an independent basis for identifying the defendant in court, and denied the motion to suppress. The witness then repeated his identification testimony to the jury.

In obtaining the *in camera* evidentiary hearing, Monroe's counsel contended that an in-court identification would necessarily be a suggestive one-on-one showup. The prosecution objected, arguing that Crenshaw's testimony to the jury should be allowed because he had not been subjected to a prior identification procedure. No alternatives to the *in camera* evidentiary hearing were suggested by counsel or considered by the trial court,

although the trial judge was clearly concerned about proceeding to:

> simply call him [Crenshaw] to the witness stand and then ask whether he can identify anyone as being [the person who accompanied Turner off the basketball court], knowing that at that point the defendant is seated clearly at a table marked Defense and is the only young black man in the courtroom, except for one of the jurors.

In affirming the trial court's use of the independent source rule, the court of appeals enunciated the following rule for in-court identification by a witness who previously has not participated in an identification procedure:

> Contrary to the People's suggestion, Colorado law recognizes that in-court identifications may be per se impermissibly suggestive because the physical arrangement of the courtroom demonstrates to the witness that it is the defendant who is charged. *Thus, even though a witness has not participated in any pre-trial identification procedure, the People are nonetheless required to make the same showing on such testimony as would be necessary had the witness been subjected to an impermissibly suggestive pre-trial procedure.* People v. Walker, 666 P.2d 113 (Colo.1983).
>
> The People have the burden of establishing by clear and convincing evidence that the in-court identification is based upon the witness' prior independent observations of the defendant. In determining whether the witness possesses such an independent basis, the court considers five factors: (1) the opportunity of the witness to view the criminal at the time in question; (2) the witness' degree of attention; (3) the accuracy of any prior description of the criminal by the witness; (4) the level of certainty demonstrated by the witness at the later confrontation; and (5) the time which has elapsed between the crime and the confrontation. *People v. Walker, supra.*

*Monroe,* 907 P.2d at 696 (emphasis added).

■ We agree with the People's argument that the court of appeals incorrectly adopted a *per se* rule of suggestiveness regarding in-court identification testimony by a witness

who had not been involved previously in any identification procedure.

## II.

In 1967 the United States Supreme Court decided a trilogy of cases that were the first to apply exclusionary rules to in-court identification of perpetrators by eyewitnesses to the crime. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *Wade* and *Gilbert* created rules for exclusion of courtroom identification of the accused in cases where law enforcement authorities had violated defendants' Sixth Amendment rights by exhibiting them to witnesses in post-indictment, pretrial lineups, without notice to and in the absence of defense counsel.[2] Once eyewitness identification has been properly admitted, its reliability and credibility are questions for the jury to determine, like other parts of the prosecution's case. However, "it is the teaching of *Wade, Gilbert,* and *Stovall, supra,* that in some cases the procedures leading to an eyewitness identification may be so defective as to make the identification constitutionally inadmissible as a matter of law." *Foster v. California,* 394 U.S. 440, 442 n. 2, 89 S.Ct. 1127, 1128 n. 2, 22 L.Ed.2d 402 (1969). Prior to these cases, the manner of a witness's extra-judicial identification of the accused was held to affect the weight but not the admissibility of identification testimony at trial. *Simmons v. United States,* 390 U.S.

377, 382, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968).

*Gilbert* required the *per se* exclusion of testimony that the witnesses had identified the accused at the illegal lineup, 388 U.S. at 273, 87 S.Ct. at 1957, and both *Wade* and *Gilbert* held that in-court identification of the accused by a witness who attended the illegal lineup may be permissible after a determination that the witness had an independent source for identification, *id.* at 272, 87 S.Ct. at 1956 (citing to *Wade* ). More specifically, unless the state can prove by clear and convincing evidence that the in-court identification of the accused is based upon a source independent of the illegal lineup identification, the in-court identification must be suppressed. *Wade,* 388 U.S. at 239–40, 87 S.Ct. at 1938–39.

Noting the importance of the initial identification procedure,[3] *Wade* reasoned that defendants were entitled to have counsel present at post-indictment pretrial identification procedures to protect against suggestiveness, *Wade,* 388 U.S. at 236–38, 87 S.Ct. at 1937–38, "by objecting to suggestive features of a procedure before they influence a witness' identification." *Moore v. Illinois,* 434 U.S. 220, 225, 98 S.Ct. 458, 463, 54 L.Ed.2d 424 (1977) (interpreting *Wade* ).

*Stovall,* decided the same day as *Wade* and *Gilbert,* considered whether, independent of a Sixth Amendment claim, an out-of-court pretrial confrontation between a witness and the accused might be "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was

**2.** The proper test to be applied in those situations is whether, once the primary illegality is established, the evidence under objection came about through "exploitation of that illegality" or, rather, through a means that is "sufficiently distinguishable to be purged of the primary taint." *Wade,* 388 U.S. at 241, 87 S.Ct. at 1939.

**3.** The *Wade* court explained that:
The identification of strangers is proverbially untrustworthy.... A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification.
... [i]t is a matter of common experience that, once a witness has picked out the accused

at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial.
*Wade,* 388 U.S. at 228–29, 87 S.Ct. at 1933.
... The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness—"that's the man."
*Id.* at 235–36, 87 S.Ct. at 1937.

denied due process of law," *Stovall*, 388 U.S. at 301–02, 87 S.Ct. at 1972, in violation of the Fourteenth Amendment, *id.* at 294–95, 87 S.Ct. at 1968–69. "It is the likelihood of misidentification which violates a defendant's right to due process," and that likelihood may form the basis for exclusion of evidence. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972); *accord Alvarez v. People*, 653 P.2d 1127, 1132 (Colo. 1982) (if facts as developed at trial eliminate identity as an issue, there is no due process right implicated by out-of-court procedures). *Stovall* determined that whether such a violation [4] occurred depended upon the totality of circumstances surrounding the confrontation. *Stovall*, 388 U.S. at 302, 87 S.Ct. at 1972–73; *accord People v. Horne*, 619 P.2d 53, 56–57 (Colo.1980) (totality of circumstances test at *in camera* hearing determined by clear and convincing evidence that there existed a source independent of tainted out-of-court procedures); *Huguley v. People*, 195 Colo. 259, 261–62, 577 P.2d 746, 747–48 (1978) (case remanded for findings of fact by clear and convincing standard whether under totality of circumstances, the in-court identification is product of previous unduly suggestive procedure).

In *Simmons*, a case not involving the Sixth Amendment, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court considered a claim that pretrial identification procedures were so tainted as to require reversal of conviction. *Simmons* set the standard that a valid due process claim for suppression of the identification testimony [5] must involve a pretrial procedure which is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." [6] *Simmons*, 390 U.S. at 384, 88 S.Ct. at 971. An in-court identification is properly considered by the jury if it does not stem from a constitutionally defective identification procedure, under the totality of circumstances. *Coleman v. Alabama*, 399 U.S. 1, 4–5, 90 S.Ct. 1999, 2000–2001, 26 L.Ed.2d 387 (1970); *accord People v. Madonna*, 651 P.2d 378, 383–84 (Colo.1982) (admission of in-court identification proper if not tainted by impermissibly suggestive pretrial procedure); *People v. Mack*, 638 P.2d 257, 266 (Colo.1981) (if out-of-court identification procedure is not unconstitutionally suggestive, it is unnecessary to address whether in-court identification has an independent source).

In *Neil v. Biggers*, 409 U.S. 188, 194–200, 93 S.Ct. 375, 379–83, 34 L.Ed.2d 401 (1972), where the witness had been involved in prior suggestive identification procedures in the case, the Court concluded that reliability under the totality of circumstances is a key factor in admitting identification testimony. "[R]eliability is the linchpin in determining ... admissibility of identification testimony...." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *accord People v. Mattas*, 645 P.2d 254, 261 (Colo.1982) (claim of unconstitutional suggestiveness unsupported, and evidence shows important indicia of reliability, rendering in-court and out-of-court identifications admissible).

The court in *Biggers* articulated a five-point totality of circumstances test to be used

---

4. Due process "protects the accused against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." *Moore v. Illinois*, 434 U.S. 220, 227, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977) (citing *Kirby v. Illinois*, 406 U.S. 682, 690–91, 92 S.Ct. 1877, 1882–83, 32 L.Ed.2d 411 (1972)).

5. Simmons asserted that the pretrial photographic identification of him by five witnesses "was in the circumstances so unnecessarily suggestive and conducive to misidentification as to deny him due process of law, or at least to require reversal of his conviction." *Simmons*, 390 U.S. at 381, 88 S.Ct. at 969. To support his due process argument, Simmons depended upon *Wade* and *Gilbert*, claiming, not that he was entitled to counsel, but simply that the identification procedure used was so prejudicial that his conviction was fatally tainted. *Id.* at 383, 88 S.Ct. at 970.

6. The pretrial identification procedures employed in *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), for example, were held under the totality of circumstances to be a denial of due process of law, and the conviction was reversed and case remanded. There, the only eyewitness to the robbery was subjected to a series of three suggestive identification procedures where the accused was the only consistent participant, including a one-on-one confrontation. *Id.* at 441–44, 89 S.Ct. at 1127–29.

in determining the reliability of the identification. The factors included: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the degree of attention of the witness; (3) the accuracy of prior descriptions given by the witness; (4) the level of the witness's certainty demonstrated at the later confrontation; and (5) the length of time that has elapsed between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. at 199, 93 S.Ct. at 382; *accord People v. Weller*, 679 P.2d 1077, 1083–84 (Colo.1984) (because pretrial procedures were not impermissibly suggestive based upon totality of circumstances test, trial court properly allowed in-court identification); *People v. Smith*, 620 P.2d 232, 238 (Colo.1980) (based upon totality of circumstances, pretrial identification procedure not impermissibly suggestive and denial of motion to suppress in-court identification was correct).

Five years after *Biggers*, the Supreme Court clarified, in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), that the evidence is for the jury to weigh if, under the totality of circumstances, an in-court or out-of-court identification is *not* tainted to the extent that "a very substantial likelihood of irreparable misidentification" exists:

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

*Id.* at 116, 97 S.Ct. at 2254; *accord People v. Thatcher*, 638 P.2d 760, 771 n. 4 (Colo.1982) (jury need not believe testimony found to be admissible); *Sandoval v. People*, 180 Colo. 180, 182–83, 503 P.2d 1020, 1021–22 (1972) (after threshold constitutional tests, questions of credibility are for the jury); *Neighbors v. People*, 171 Colo. 349, 354, 467 P.2d 804, 806–07 (1970) (testimony ruled admissible because not unconstitutionally tainted must still be considered by jury for weight).

*Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), involved an in-court identification at a preliminary hearing for the purpose of determining whether there was probable cause to bind the defendant over and set bail. There the unrepresented defendant was presented for the first time to the victim, who had been told by a policeman that she was going to view a suspect and that she should identify him if she could. The victim was asked to make an in-court identification at the preliminary hearing under extremely suggestive circumstances.[7]

The Court, in holding that the accused's Sixth and Fourteenth Amendment right to counsel was violated, reasoned that "[h]ad petitioner been represented by counsel, some or all of this suggestiveness could have been avoided." *Id.* at 230, 98 S.Ct. at 465. For example, the court suggested that a lineup might have been arranged where the victim could view petitioner in a less suggestive setting,[8] the victim might have been excused while prejudicial information was recited, the accused might have been placed among others in the courtroom audience when the victim was requested to make the identification,

---

7. The Court noted that:

It is difficult to imagine a more suggestive manner in which to present a suspect to a witness for their critical first confrontation than was employed in this case. The victim, who had seen her assailant for only 10 to 15 seconds, was asked to make her identification after she was told that she was going to view a suspect, after she was told his name and heard it called as he was led before the bench, and after she heard the prosecutor recite the evidence believed to implicate petitioner.

*Moore*, 434 U.S. at 229–30, 98 S.Ct. at 465.

... [B]efore the State's Attorney asked the victim to identify [the] petitioner, he stated: "... the victim was raped and forced to com-

mit an oral copulation. Taken from her was a guitar and other instruments. When the defendant was arrested upon an arrest warrant signed by the Judge of the Court, the articles, the guitar and other instruments were found in the apartment, as were the clothes described of the man that attacked her that day."

*Id.* at 230 n. 4, 98 S.Ct. at 465 n. 4.

However, the guitar and flute were not the ones taken from the victim, and were not introduced into evidence at trial. Neither was the clothing used as evidence. *Id.*

8. In Colorado, nontestimonial procedures may be requested by a defendant pursuant to Crim. P. 41.1(g).

and cross-examination might have been employed "to test [the] identification before it hardened." *Id.* at 230 n. 5, 98 S.Ct. at 465–66 n. 5. The Court applied the strict rule of *Gilbert*, holding that evidence of the identification at the illegal pretrial hearing should not have been admitted at trial before the jury to "buttress" the prosecution's case.[9] *Id.* at 231–32, 98 S.Ct. at 466–67.

### III.

We conclude that the court of appeals in this case erred in adopting a *per se* rule triggering the independent source rule as to in-court first-time identifications.

### A.

In *People v. Walker*, we said that "under some circumstances an in-court identification may constitute an impermissible one-on-one confrontation which is unnecessarily suggestive and conducive to irreparable mistaken identification." *Walker*, 666 P.2d at 119. We further stated that "we have refused to adopt a rule that one-on-one confrontations are per se violations of due process." *Id.*

The following facts were important to our decision in *Walker* as we reviewed invocation of the independent source rule with respect to a witness previously involved in an identification procedure in the case:

Mrs. Boehler was unable to identify the defendant in a photographic line-up conducted by the police five days after the robbery. Twenty months had elapsed between the date of the crime and the trial.

The district attorney told Mrs. Boehler, and she assumed, that the defendant on trial was the shotgun-wielding robber. Other than the judge's clerk, the defendant was the only black male in the courtroom at the time the identification was made.

*Id.* at 120. Mrs. Boehler was unsuccessful in identifying the defendant in a photographic lineup prior to trial and was the only witness at trial to identify the defendant as one of the perpetrators. In addition, the prosecutor made improper comments to the witness. As a result of an *in camera* evidentiary hearing, the trial court determined that the witness had an independent source for her identification by employing the five-point *Biggers* analysis, and the witness then testified to the jury.

### B.

Unlike *Walker*, identification of the defendant as perpetrator here in *Monroe* was made by several witnesses. Crenshaw, an additional witness, did not participate in any out-of-court identification procedure that called into question his ability to identify the perpetrator. *See People v. Suttles*, 685 P.2d 183, 187 (Colo.1984) (where out-of-court identification procedures are not unconstitutionally suggestive, predicate for independent source doctrine is missing); *People v. Mack*, 638 P.2d 257, 266 (Colo.1981) (same); *cf. People v. Palmer*, 194 Colo. 186, 187–88, 570 P.2d 251, 252–53 (1977) (suppression proper because victim could not identify assailant visually or by his voice at pretrial lineup).

9. The Tenth Circuit Court of Appeals has articulated its concern regarding in-court identifications following a suggestive pretrial identification procedure as follows:

"The concern with in-court identification, where there has been suggestive pretrial identification, is that the witness later identifies the person in court, not from his or her recollection of observations at the time of the crime charged, but from the suggestive pretrial identification. Because the jurors are not present to observe the pretrial identification, they are not able to observe the witness making that initial identification. The certainty or hesitation of the witness when making the identification, the witness's facial expressions, voice inflection, body language, and the other normal observations one makes in everyday life when judging the reliability of a person's state-

ments, are not available to the jury during this pretrial proceeding. There is a danger that the identification in court may only be a confirmation of the earlier identification, with much greater certainty expressed in court than initially. When the initial identification is in court, there are different considerations. The jury can observe the witness during the identification process and is able to evaluate the reliability of the initial identification. On the other hand, there can be little doubt that the initial in-court identification is suggestive."

*United States v. Robertson*, 19 F.3d 1318, 1323 (10th Cir.) (citations omitted) (quoting *United States v. Domina*, 784 F.2d 1361, 1368 (9th Cir. 1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987)), *cert denied*, ── U.S. ──, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994).

■ Here the trial court held an *in camera* evidentiary hearing at which Crenshaw confronted the defendant and made the identification out of the presence of the jury. But the circumstances do not indicate that invocation of the independent source rule was required. The prosecution made no improper remarks to the witness. *Cf. People v. Estep,* 196 Colo. 340, 345–46, 583 P.2d 927, 932–33 (1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1796, 60 L.Ed.2d 245 (1979) (due process claim based upon improper prosecutorial conduct). Counsel and the trial court had the opportunity to fashion procedures, if appropriate under the circumstances, to forestall suggestiveness in the course of the in-court identification.

For example, a request for nontestimonial identification may be approved by the court during trial, Crim. P. 41.1(b). The court may issue an order with terms and conditions for avoiding taint in the nontestimonial identification, Crim. P. 41.1(g). The request may be for an in-person lineup, Crim. P. 41.1(h)(2), or other procedure as suggested in *Moore,* 434 U.S. at 230 n. 5, 98 S.Ct. at 465–66 n. 5.

■ When aware in advance of trial that first-time identification testimony may be presented, the defendant can make a motion for an out-of-court lineup procedure "to assure that the identification witness will first view the suspect with others of like description rather than in the courtroom sitting alone at the defense table." *United States v. Brown,* 699 F.2d 585, 594 (2d Cir.1983). In-court identifications are subject to suppression motions and orders in circumstances where identifications may be constitutionally suspect. *People v. Palmer,* 194 Colo. 186, 187–88, 570 P.2d 251, 252–53 (1977).

■ Although there is no constitutional entitlement to an in-court lineup or other procedures designed to alter the usual trial setting, special procedures for in-court identification may be appropriate in certain circumstances, as articulated in *United States v. Archibald,* 756 F.2d 223, 223 (2d Cir.1984) (clarifying its earlier opinion, *United States v. Archibald,* 734 F.2d 938 (2d Cir.1984)). There the court said:

> [S]pecial procedures are necessary only where (1) identification is a contested issue; (2) the defendant has moved in a timely manner prior to trial for a lineup; and (3) despite that defense request, the witness has not had an opportunity to view a fair out-of-court lineup prior to his trial testimony or ruling on the fairness of the out-of-court lineup has been reserved.

Such procedures are within the discretion of the trial court. *United States v. Domina,* 784 F.2d 1361, 1369 (9th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987).

The purpose of requiring notice to and the presence of defense counsel during corporeal identification is to engage defense counsel in the process of avoiding impermissible suggestiveness in the identification.[10] The prosecution does not have the burden of the independent source rule whenever a witness who has not previously made an identification in the case is called to the stand. The purpose of the independent source doctrine is to address those situations where identification procedures have been found to be unconstitutionally tainted. *See generally People v. Suttles,* 685 P.2d 183 (Colo.1984); *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). When the court finds that a procedure has been so impermissibly suggestive that a substantial likelihood of irreparable misidentification exists, then the burden is on the People to prove by clear and convincing evidence that identification is not the result of the suggestive procedure and is based upon the witness's own observations at the time of the crime. *Moore,* 434 U.S. at 225–26, 98 S.Ct. at 462–64 (citing to *Wade,* 388 U.S. at 240, 87 S.Ct. at 1939); *accord*

---

10. *Wade,* 388 U.S. at 236, 87 S.Ct. at 1937 ("presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial"); *Stovall,* 388 U.S. at 298, 87 S.Ct. at 1971 ("The presence of counsel will significantly promote fairness at the confrontation and a full hearing at trial on the issue of identification.") (interpreting *Wade* ); *Moore,* 434 U.S. at 230, 98 S.Ct. at 465 ("Had petitioner been represented by counsel, some or all of this suggestiveness could have been avoided.... Here, as in [*Wade* and *Gilbert* ], petitioner's Sixth Amendment rights were violated by a corporeal identification conducted after the initiation of adversary judicial criminal proceedings and in the absence of counsel.").

*People v. Suttles,* 685 P.2d 183, 189 (Colo. 1984); *People v. Madonna,* 651 P.2d 378, 383 (Colo.1982).

■ The exclusionary rule has not been extended to in-court identifications alleged to be suggestive simply because of the typical trial setting. *United States v. Domina,* 784 F.2d 1361, 1369 (9th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); *see Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977) (short of the point of "very substantial likelihood of irreparable misidentification" identification evidence is for jury to weigh); *Watkins v. Sowders,* 449 U.S. 341, 347, 101 S.Ct. 654, 658, 66 L.Ed.2d 549 (1981) ("[T]he *only* duty of a jury in cases in which identification evidence has been admitted will often be to assess the reliability of that evidence.") (emphasis in original). "Only when there is a 'very substantial likelihood of irreparable misidentification' is the issue of the credibility of the identification not left to the jury to decide." *United States v. Robertson,* 19 F.3d 1318, 1323 (10th Cir.) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)), *cert. denied,* —— U.S. ——, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994).

### IV.

Accordingly, we disapprove the court of appeals expansion in *People v. Monroe* of our decision in *People v. Walker.* First-time in-court identification of the accused by an eye-witness, absent constitutionally impermissible suggestive circumstances, does not require invocation of the independent source rule.