The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Rhidale DOTSON, Defendant–Appellant.

No. 00CA1029.

Colorado Court of Appeals, Div. V.

Jan. 17, 2002.

Rehearing Denied March 7, 2002.

Certiorari Denied Oct. 7, 2002.

Ken Salazar, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, CO, for Plaintiff-Appellee.

David S. Kaplan, Colorado State Public Defender, Ann M. Aber, Deputy State Public Defender, Denver, CO, for Defendant-Appellant.

Opinion by Judge KAPELKE.

Defendant, Rhidale Dotson, appeals from the judgments of conviction and sentences entered upon a jury verdict finding him guilty of aggravated robbery, conspiracy to commit aggravated robbery, second degree assault, and first degree burglary. We affirm, but remand for amendment of the mittimus.

The victim had placed an advertisement in the newspaper to sell two electronic keyboards. He received a call regarding the ad and arranged a meeting time. Three men came to his home. While the victim was setting up the keyboards and other equipment, he turned around and saw that the three were pointing guns at him. Two of the men took the equipment, and the third forced the victim to his knees and struck him several times with a gun.

Several weeks later, the victim was shown three photo arrays but was unable to make any identification. Two weeks thereafter, the investigating detective learned that a keyboard case had been pawned by defendant's brother. The victim was then shown two additional photo arrays, each with six photographs. The first included a photograph of defendant's brother, and the second included a photograph of defendant. The victim positively identified defendant as the third assailant, the one who had hit him with the gun. The victim was then shown the keyboard case, which he identified as his own.

Defendant was arrested and charged with aggravated robbery, conspiracy to commit aggravated robbery, second degree assault, and first degree burglary. Before trial, defendant filed motions to suppress the evidence of the victim's out-of-court identification and other evidence seized from defendant's home. The court denied

the motions. The jury found defendant guilty as charged. Defendant was sentenced to twenty years on the aggravated robbery count, fifteen years on the second degree assault count, and ten years on the crime of violence count, with those sentences to run consecutively to one another and concurrently with the five year sentence on the conspiracy count.

I.

Defendant contends that the trial court committed reversible error by failing to suppress the evidence of the victim's identification of defendant from the photographic array. We disagree.

A pretrial identification procedure violates a defendant's due process rights if it is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *People v. Monroe,* 925 P.2d 767, 771 (Colo.1996)(quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968)). The question of whether a pretrial photographic identification procedure is impermissibly suggestive must be resolved in light of the totality of the circumstances. *People v. Monroe, supra.* An out-of-court identification made as a result of an unnecessarily suggestive identification procedure is inadmissible unless the identification can be shown under the totality of circumstances to be reliable. *People v. Mattas,* 645 P.2d 254 (Colo.1982).

A photographic array is not unduly suggestive if the photos are matched by race, approximate age, hair type, and a number of other characteristics. *People v. Harris,* 914 P.2d 434 (Colo.App.1995). Exact replicas of the suspect's physiognomy are not required. *People v. Bolton,* 859 P.2d 311 (Colo.App. 1993).

Here, the victim had described his assailant as a tall black man between twenty and thirty years old with a round face. All the photo arrays shown to the victim included men of the same age and race as defendant. In the array that included defendant, several of the other men were wearing white T-shirts similar to that of defendant. The other subjects in the photos also matched defendant in hair length and style, and several have faces approximately the same shape as defendant's.

A.

Defendant contends that the array was impermissibly suggestive because the background of his photograph was much darker than that of the other five. He also contends that in the photograph his facial features appeared much darker than they really are and that this led the victim to select his photograph. We disagree.

Much of defendant's argument is in reference to a color copy of the original photo array. In the copy, defendant's features are so dark as to be almost unrecognizable. However, the record shows that the victim identified defendant from the original photographic array, in which defendant's features are more clearly portrayed, and then circled and initialed the same picture on the color copy.

Although the background of defendant's original photograph is somewhat darker than the others, it is not so striking or distinctive as to be impermissibly suggestive and to give rise to a substantial likelihood of irreparable misidentification.

B.

Defendant also contends that the out-of-court identification was otherwise unreliable because it occurred two months after the incident and because, before being shown the last two arrays, the victim was told that a keyboard case had been recovered and was thus led to infer that the arrays included a suspect in the case.

The United States Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), articulated a five-point totality of circumstances test to be used in determining the reliability of an identification. The factors include: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the degree of attention of the witness; (3) the accuracy of prior descriptions given by the witness; (4)

the level of the witness's certainty demonstrated at the later confrontation; and (5) the length of time between the crime and the confrontation.

If a pretrial identification is not impermissibly suggestive as a matter of law, but is nonetheless tainted with some degree of untrustworthiness, it is admissible, and the weight to be accorded it is a matter for the jury. *People v. Monroe, supra.*

The victim testified that he observed his assailant inside his home for at least fifteen minutes. The victim's description included the approximate age, height, and clothing of the assailant, as well as specific details about his teeth and the shape of his head. The victim quickly identified defendant from the photograph and was positive about his identification.

Eight weeks had elapsed before the victim was shown an array that included defendant's picture. However, the extent of the delay is but one factor to be considered and is not per se an indication of unreliability. *See People v. Walker,* 666 P.2d 113 (Colo.1983)(identification of defendant made twenty months after incident was permissible). The jury was capable of considering the delay, as well as the other circumstances of the photo array, in determining whether defendant was mistakenly identified as the assailant.

We agree with the trial court's conclusion that, under the totality of the circumstances, the victim's identification of defendant was not unreliable as a matter of law. Therefore, the trial court properly refused to suppress the evidence of identification.

## II.

Defendant next contends that the trial court erred in admitting evidence seized in the search of his home. We reject the contention.

Six law enforcement officers went to defendant's home to execute an arrest warrant for theft by receiving. When defendant answered the door, the officers stepped in and arrested him. According to the officers, defendant then consented to a search of the premises. Two keyboards were found, but they were not seized at that time. This information was communicated to the detective investigating this case, and he used it as the basis for obtaining a search warrant. The two keyboards were seized in a search conducted pursuant to the warrant.

Defendant argues that the warrantless search accompanying his arrest was unlawful and that his consent was not voluntarily given. He maintains that because of the overwhelming display of force, and the fact that he was in handcuffs at the time, he was not free to refuse the request to search. The trial court ruled that the search was consensual and also ruled, in the alternative, that the keyboard later identified by the victim was in plain view at the time of the arrest and was therefore properly seized.

Warrantless searches are deemed unreasonable unless they satisfy an exception to the warrant requirement. One such exception is consent. No search warrant is required where consent, in light of the totality of the circumstances, has been freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Herrera,* 935 P.2d 956 (Colo.1997). Consent to a search is voluntary if it is "not the result of duress or coercion, express or implied, or any other form of undue influence exercised against the defendant." *People v. Thiret,* 685 P.2d 193, 201 (Colo.1984).

In reviewing a determination as to whether a voluntary consent was obtained, we give deference to the factual findings of the trial court, whose function it is to weigh the evidence and determine the credibility of the witnesses. *People v. Herrera, supra.* As long as there is support for a trial court's findings of fact, we will not overturn them, even though a contrary position may have support in the record. *People v. Thomas,* 853 P.2d 1147 (Colo.1993).

Here, the evidence revealed that six officers, two in uniform, went to defendant's home to arrest him. When he answered the door, he was handcuffed and frisked for weapons. The detective executing the arrest warrant could not recall whether the officers

had their guns drawn. According to the detective, there was no yelling or other coercive activity, and defendant was not forced to the ground. Defendant did not dispute these facts.

The trial court's findings are supported by the evidence, and thus we defer to that court's determination that the search was consensual. In addition, the record supports the trial court's alternative basis for the ruling—that one of the keyboards was in plain view.

Officers may seize incriminating evidence discovered in plain view without a warrant if they are legitimately on the premises. *People v. Kluhsman,* 980 P.2d 529 (Colo.1999). Here, the detective testified that he could see one of the keyboards as he entered the front door of defendant's apartment.

Defendant contends that because he came to the door, the officers were not justified in entering his apartment to place him under arrest. Since they were not legitimately on the premises, defendant argues, the plain view exception does not apply. We disagree.

Police officers may enter a suspect's home to make an arrest when they have a warrant and when they have reason to believe the suspect is within. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

Here, the officers were legitimately on the premises because they were executing a valid arrest warrant. *See People v. Lillie,* 707 P.2d 1043 (Colo.App.1985).

Although defendant argues that the police should have ordered him out of his apartment and then placed him under arrest, he cites no authority for such a requirement. To the contrary, the supreme court has recognized that law enforcement officers may properly conduct a search of the immediate area incident to a lawful arrest. *People v. Hufnagel,* 745 P.2d 242, 247 (Colo.1987). There has been no showing here that the officers' actions were unreasonable.

In addition, we are not persuaded that *Illinois v. McArthur,* 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), cited by defendant, mandates a different result. In that case, as in *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the Court recognized that a person standing in the doorway of a house is in a public place for the purposes of a warrantless arrest. However, we do not read these holdings to suggest that law enforcement officers would be prohibited from stepping inside a doorway when arresting a subject pursuant to a valid arrest warrant.

Because the keyboards were not seized as a result of an unconstitutional warrantless search, the trial court did not err in admitting the evidence that they were found in defendant's home.

## III.

Defendant next contends that the trial court erred in refusing his tendered instructions on aggravated robbery with a simulated weapon. We perceive no error.

A defendant is entitled to an instruction on a lesser offense if there is a rational basis in the evidence to support an acquittal of the greater offense and conviction of the lesser. *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983). The rationale for allowing such an instruction is to ensure that the jury does not convict the defendant of a crime greater than the one actually committed merely because the greater offense is the only crime charged and the jury is aware that some offense was committed. *People v. Rea,* 7 P.3d 995 (Colo.App.1999).

Here, the victim, a former law enforcement officer, testified that as he was setting up the keyboards and equipment he heard the clicking of gun magazines. He turned around and saw "three men and three guns." He was able to describe the guns in detail. The guns were not produced at trial. However, there was no evidence that would support an inference that the guns the victim had seen were not real.

Therefore, there was no rational basis for the jury to be instructed on the lesser offense of aggravated robbery with a simulated weapon.

Defendant also argues that, by refusing the tendered instruction, the trial court improperly took away from the jury the determination of whether the instrument carried by the assailant was actually a deadly weapon. We reject the contention.

Defendant was charged with aggravated robbery under § 18–4–302, C.R.S.2001. The jury was instructed that, in order to convict, it had to find beyond a reasonable doubt that during the act of robbery or immediate flight therefrom, defendant (1) knowingly wounded or struck the person robbed with a deadly weapon or (2) put the person robbed in reasonable fear of death or bodily injury by the use of force, threats, or intimidation with a deadly weapon. "Deadly weapon" was defined as "any of the following, which, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury: (a) a firearm, whether loaded or unloaded, or (b) a bludgeon."

The court, in refusing the tendered instruction, evaluated the evidence presented and determined that there was no rational basis to instruct the jury on aggravated robbery with a simulated weapon. The determination of whether defendant used a deadly weapon in the course of the robbery was properly left to the jury.

Therefore, we perceive no error in the trial court's refusal to instruct the jury on the lesser offense.

## IV.

Defendant's final contention is that his convictions for aggravated robbery and second degree assault must merge, or, in the alternative, that his sentences for these convictions must run concurrently. We disagree that the convictions must merge, but conclude that the trial court should have imposed concurrent sentences for them.

### A.

A defendant may be convicted of multiple offenses arising out of a single transaction if he or she has violated more than one statute. Section 18–1–408(7), C.R.S. 2001. However, in the absence of legislative authorization, a defendant may not be convicted of more than one offense if one is a lesser included offense of the other. Section 18–1–408(1)(a), C.R.S.2001. A court is also prohibited from imposing multiple punishments for a greater and a lesser included offense by the double jeopardy clauses of the federal and state constitutions and by the judicially-created rule of merger. *Armintrout v. People,* 864 P.2d 576 (Colo.1993).

Section 18–1–408(5)(a), C.R.S.2001, defines a lesser included offense as one "established by proof of the same or less than all the facts required to establish the commission of the offense charged." This test applies to double jeopardy and merger claims. *People v. Garcia,* 940 P.2d 357 (Colo. 1997).

As relevant here, one commits aggravated robbery if, during the act of robbery or immediate flight therefrom, he or she "knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury." Section 18–4–302(1)(b), C.R.S.2001.

Further, as relevant here, conviction for second degree assault requires a showing that the person "[w]ith intent to cause bodily injury to another person ... causes such injury to any person by means of a deadly weapon." Section 18–3–203(1)(b), C.R.S. 2001.

A comparison of the statutes describing the two offenses shows that second degree assault includes elements of proof that are different from those required for aggravated robbery. Thus, proof of aggravated robbery does not establish all the elements of second degree assault.

First, to obtain a conviction for second degree assault the prosecutor must show that the person actually caused bodily injury to the victim. A conviction for aggravated robbery does not necessarily require such a showing, but rather can rest on evidence that the defendant merely struck the victim or put him or her in reasonable fear of death or bodily injury.

Further, while a conviction for second degree assault requires a showing that the defendant acted "with intent," a conviction for aggravated robbery can be obtained upon a showing that the defendant merely acted "knowingly."

Offenses defined as requiring a mental state of "knowingly" are general intent crimes. A person acts knowingly with respect to conduct or to a circumstance if "he is aware that his conduct is of such nature or that such circumstance exists" or, with respect to a result of his conduct, "he is aware that his conduct is practically certain to cause the result." Section 18–1–501(6), C.R.S.2001. A person acts intentionally when "his conscious objective is to cause the specific result proscribed by the statute defining the offense." Section 18–1–501(5), C.R.S.2001.

Because a conviction for second degree assault, unlike a conviction for aggravated robbery, requires proof of bodily injury and specific intent, we conclude that second degree assault is not a lesser included offense of aggravated robbery. Accordingly, the convictions do not merge, and there is no basis for vacating defendant's second degree assault conviction.

B.

As noted, we agree with defendant's contention that the trial court should have imposed concurrent sentences for aggravated robbery and second degree assault.

If two or more offenses committed against a single victim are based on the same act or series of acts arising from the same criminal episode, and the evidence supporting the counts is identical, then concurrent sentences must be imposed. Section 18–1–408(3), C.R.S.2001; *People v. Jurado,* 30 P.3d 769 (Colo.App.2001). Evidence supporting different crimes is considered identical for purposes of this section when the same act or acts gave rise to both charges. *People v. Dixon,* 950 P.2d 686 (Colo.App.1997).

Here, the jurors were instructed that they could convict defendant of aggravated robbery if they found that during the act of robbery or immediate flight therefrom, defendant (1) knowingly wounded or struck the person robbed with a deadly weapon, *or* (2) put the person robbed in reasonable fear of death or bodily injury by the use of force, threats, or intimidation with a deadly weapon. The jury returned a general verdict on this count. Thus, in finding defendant guilty of this offense, the jury could have relied on either the evidence that defendant *hit* the victim with the gun or the evidence that defendant had *threatened* the victim with the gun. The evidence that defendant hit the victim was also the basis of defendant's second degree assault conviction.

In *People v. Page,* 907 P.2d 624 (Colo.App. 1995), a division of this court held that where the jury could have convicted the defendant of two offenses based on identical evidence, the sentences imposed must be concurrent. Here, the jury could have based its determination that defendant committed aggravated robbery on the evidence that defendant struck the victim with the gun. Because this is the same evidence that supported the second degree assault conviction, we conclude that the trial court should have imposed concurrent sentences on these convictions.

The judgments of conviction and sentences are affirmed, except that the case is remanded to the trial court to amend the mittimus to impose concurrent, rather than consecutive, terms of imprisonment for the aggravated robbery and second degree assault convictions.

Judge CASEBOLT and Judge VOGT concur.