The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Shedrick WILFORD, Defendant–
Appellant.

No. 02CA1199.

Colorado Court of Appeals,
Div. II.

Oct. 7, 2004.

Certiorari Granted May 16, 2005.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Tracy C. Renner, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

CARPARELLI, J.

Defendant, Shedrick Wilford, appeals the judgment of conviction entered on a jury verdict finding him guilty of aggravated robbery in violation of § 18–4–302(1)(c), C.R.S. 2004. We affirm.

Defendant was charged with one count of aggravated robbery and one count of second degree assault. The jury convicted him on the robbery charge, specifically finding that a confederate aided and abetted defendant in the robbery. When the jury could not reach a unanimous verdict on the assault charge, the court declared a mistrial and defendant later pled guilty to a third degree assault. Defendant was sentenced to fourteen years in the Department of Corrections.

## I.

■ Defendant first contends the trial court violated his rights to due process and a fair trial when it denied his motion to suppress an out-of-court identification based on a suggestive photographic lineup. We disagree.

We review the constitutionality of a pre-trial identification procedure as a mixed question of law and fact. Although the trial court's findings of historical facts are entitled to deference, we may afford different weight to those facts and reach a different conclusion. *People v. Borghesi,* 66 P.3d 93 (Colo. 2003); *Bernal v. People,* 44 P.3d 184 (Colo. 2002).

■ A pretrial identification procedure violates a defendant's due process rights if it is so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. *People v. Monroe,* 925 P.2d 767 (Colo.1996).

■ The defendant has the burden of demonstrating that a photo array was impermissibly suggestive. If the defendant does not meet this burden, no further inquiry is necessary. If the defendant meets this burden, the prosecution must show that the identification was reliable under the totality of the circumstances. *People v. Borghesi, supra, Bernal v. People, supra.*

■ Relevant factors to determine whether the identification procedure is impermissibly suggestive include the size of the array, the details of the photographs themselves, and the manner of its presentation. *Bernal v. People, supra.*

### A.

Defendant argues that the red shirt he wore in the photo, the positioning of the picture in the middle of the top row, and the fact that he was one of only two people in the array who had hair braids caused his picture to stand out from the others, rendering the lineup impermissibly suggestive. We are not persuaded.

■ The prosecution is not required to provide exact replicas of the defendant for a photo lineup. A photo lineup complies with due process requirements when the photos are matched by common characteristics, such as race, approximate age, facial hair, and other characteristics, unless it includes a photograph unique in some manner directly related to an important identification factor. *People v. Borghesi, supra.*

Here, the detective testified that before viewing the array, the victim read and stated that he understood a standardized admonition advising that the array might or might not contain a picture of the suspect, that hair styles could be easily changed, and that pictures might not always depict a person's true complexion.

The photo array consists of six photographs. All the men in the array are the same race and approximate age, have black hair and the same type of facial hair, and share similar facial characteristics. Defendant is wearing a jacket that covers most of his red shirt.

Although the robber was described as having braided hair, and only two men in the array have braided hair, the degree of variation among the pictures is not so great as to make defendant stand out among the others. Defendant provides no evidence to support his contention that any one position in a six-photo array is suggestive, and we perceive no basis to conclude that the position of a photo in the middle of the top row is so impermissibly suggestive that it gives rise to a substantial likelihood of irreparable misidentification.

Accordingly, we conclude that this photo lineup is not impermissibly suggestive.

### B.

■ We reject defendant's assertion that the manner in which the lineup was presented was impermissibly suggestive because the victim could arguably infer that defendant's photograph was in the array. *See People v. Walford,* 716 P.2d 137 (Colo.App.1985)(an otherwise properly conducted lineup is not constitutionally infirm where a witness knows that the suspect has been included in the lineup).

Although defendant speculates that the victim might have observed the detective

preparing the photo array, there is no evidence that the victim saw the array being prepared or that the procedure used to present the lineup in any way suggested a particular suspect. Thus, we conclude that the circumstances surrounding the presentation of the lineup did not render it impermissibly suggestive.

### C.

■ Defendant next contends that the trial court committed reversible error when it denied his request to call the victim to testify about the identification procedures. Defendant argues that under *Bernal v. People, supra,* the court was required to look at the "totality of the circumstances" in evaluating the propriety of the identification procedures and that the victim might have testified that he was able to observe the detective composing the lineup. We are not persuaded.

Under the *Bernal* test, the court is not required to inquire into the totality of circumstances unless the defendant has proved that the photo array is impermissibly suggestive. *See Bernal v. People, supra.* Here, because the lineup was not impermissibly suggestive, the trial court was not required to evaluate the totality of the circumstances surrounding the identification procedure.

■ Moreover, a trial court is vested with broad discretion to control the mode and extent of the presentation of evidence, and, absent a clear abuse of that discretion, a court's rulings will not be disturbed on review. *People v. Cole,* 654 P.2d 830 (Colo. 1982).

At the suppression hearing, a detective testified about the identification procedures and stated that the victim could not have observed him composing the photo lineup. Among other things, the detective testified that the victim told him that an acquaintance said the assailant's name was "Shaq."

At the conclusion of the detective's testimony, defendant asked to call the victim as a witness to testify that the detective's testimony was inconsistent with the victim's statement that "the person named Shaq was a person somewhere in the crowd."

Defendant fails to explain how the victim's inconsistent statement about the identity of his attacker was relevant to the possible suggestiveness of the identification procedures. Therefore, we perceive no abuse of discretion in the trial court's refusal to allow defendant to call the victim as a witness.

■ To the extent defendant argues that the victim might have testified that he was able to observe the detective composing the lineup, defendant did not raise this issue before the trial court, and accordingly, we decline to address it. *See People v. Jansen,* 713 P.2d 907 (Colo.1986).

### II.

We reject defendant's contention that his conviction must be reversed because of erroneous jury instructions.

### A.

■ Defendant argues that the trial court erred when it rejected his tendered jury instruction defining the term "confederate" and when it declined to define the term. We perceive no error.

We first reject defendant's argument that the trial court committed structural error when it did not give his tendered instruction. *See Griego v. People,* 19 P.3d 1 (Colo. 2001)(when a trial court misinstructs the jury on an element of an offense, the error is not reviewable under the structural error standard).

Appellate courts generally review the denial of a tendered additional jury instruction for abuse of discretion. *People v. Ross,* 179 Colo. 293, 500 P.2d 127 (1972); *People v. Mascarenas,* 972 P.2d 717 (Colo.App.1998).

And here, because we conclude that the court did not abuse its discretion, we need not review this issue under the harmless error standard.

Here, the aggravated robbery instruction stated:

The elements of the crime of Aggravated Robbery are:

(1) That the Defendant,

(2) in the City and County of Denver, State of Colorado, on or about January 15, 2001,

(3) knowingly,

(4) took anything of value,

(5) from the person or presence of [the victim],

(6) by the use of force or threats or intimidation, and

(7) during the act of robbery or the immediate flight therefrom,

(8) knowingly,

(9) put [the victim] in reasonable fear of bodily injury,

(10) by the use of force or threats or intimidation,

(11) with a deadly weapon,

or

(8) the defendant had present a confederate who was aiding or abetting the perpetration of the robbery, and

(9) the confederate was armed with a deadly weapon, and

(10) put [the victim] in reasonable fear of bodily injury,

(11) by the use of force or threats or intimidation.

Defendant tendered an instruction incorporating a definition from a legal dictionary of the term "confederate": " 'Confederate' as used in the instruction number ___ means an associate who has engaged in an agreement to commit a criminal act and has done an overt act in furtherance of that agreement." The court rejected defendant's instruction and declined to define the term.

### 1.

Defendant first argues that his instruction should have been given because, in § 18–4–302(1)(c), the General Assembly chose the word "confederate" instead of the word "person" and thus, necessarily intended the word to have a specific legal meaning. Defendant further argues that the statutory language that the defendant "has present a confederate" implies that there was a prior agreement between the defendant and the confed-

erate and that the defendant arranged to have the confederate present. We disagree.

The aggravated robbery statute does not define the term "confederate," nor does a definition appear in CJI–Crim. No Colorado appellate opinion requires an explanatory instruction regarding the word "confederate."

■ A court's primary task in construing a statute is to ascertain the legislative intent, giving the statutory language its commonly accepted and understood meaning. *People v. Schuett*, 833 P.2d 44 (Colo.1992).

We agree that the term "confederate," as it is used in the aggravated robbery statute, means more than a bystander. Indeed, the relevant portion of the jury instruction, identical to the language of the statute, provides that the confederate must be "aiding and abetting the perpetration of the robbery." Thus, defendant's concern that he could be convicted of aggravated robbery merely because a bystander happened to have a gun is unfounded.

Defendant's proposed definition goes beyond the commonly understood meaning of the word "confederate," which, as the trial court correctly observed, is an "ally." If the General Assembly intended "confederate" to have a meaning different from the commonly understood one, it could have defined the word or used a term of art, such as "coconspirator." To adopt defendant's construction would improperly add an element to the crime of aggravated robbery. We thus conclude that the trial court correctly rejected defendant's proposed instruction regarding the meaning of "confederate."

### 2.

Defendant next argues that the word "confederate" has a specific legal meaning and is not a word about which jurors have a common understanding. We are not persuaded.

■ Generally, instructions phrased in the language of the statute are proper. *Blincoe v. People*, 178 Colo. 34, 494 P.2d 1285 (1972); *People v. Silva*, 987 P.2d 909 (Colo. App.1999). Absent a contrary showing, it is presumed that the jury understood the jury instructions. *People v. Moody*, 676 P.2d 691 (Colo.1984).

Here, the language of the jury instruction corresponds to the statutory definition of aggravated robbery. The term "confederate" is not a highly technical one and is well within the comprehension of the jury. Moreover, there was no indication that the jury misunderstood the instruction.

### B.

■■■ Defendant also asserts that the trial court erred in its response to the jury question about whether "carrying a gun" is the same as "using" a gun in the context of the phrase "by use of force or threat or intimidation" in the aggravated robbery instruction. Again, we disagree.

After deliberations began, the jury submitted the following question: "Does carrying a gun (simply having it on you) mean the same thing as *using* it by force or threat or intimidation?" At trial, defendant argued that because the instruction did not contain the words "use of weapon," the court should simply answer the question with the word "no." However, the court gave the following instruction:

> Merely carrying a gun is not necessarily "use" within the meaning of [the instruction]. On the other hand, "use" does not have to be by firing it or pointing it or even touching it. The question is whether Defendant or a confederate used a gun to force, threaten[,] or intimidate [the victim] into reasonably fearing bodily injury. Whether the facts here rise to the level of "use" is a question for you to decide.

Defendant argues that because the jury did not indicate that it misunderstood the word "use" and did not ask the court to clarify its meaning, the answer was broader than required and confused the jury. Defendant also argues that the court improperly lowered the burden of proof when it instructed the jury that "use" is not limited to firing, pointing, or touching the weapon. We disagree.

■■■ The decision to provide a jury with additional written instructions is a matter committed to the trial court's sound discretion. *People v. Mascarenas, supra.* Nonetheless, if a jury inquires about the meaning of a particular instruction, the court should provide a supplemental instruction sufficient to clarify the jury's uncertainty. *Leonardo v. People,* 728 P.2d 1252 (Colo. 1986).

Because the jury indicated it was confused about the meaning of the phrase "use of force or threat or intimidation," it was proper for the court to give a supplemental instruction. The court's response reflected an accurate statement of law. *See People v. Hines,* 780 P.2d 556 (Colo.1989)("use" can be established without pointing the weapon at the victim). Moreover, the record does not support defendant's contention that the answer confused the jury.

Accordingly, we find no error in the court's response to the jury question.

### III.

■■■ Defendant next argues that the court violated his constitutional rights to due process and a fair trial when it responded to jury questions without defendant being present. We disagree.

The defendant in a criminal case has a fundamental right to have counsel present when the court responds to questions from the jury after it has commenced deliberations. Colo. Const. art. II, § 16; *Leonardo v. People, supra.*

Assuming, without deciding, that there was constitutional error in merely having defendant's counsel present without defendant, reversal is not required if the error was harmless beyond a reasonable doubt. When the defendant's counsel is present and has an opportunity to review and object to the jury's question, and the court properly responds to the question, there is no prejudice, and the defendant's absence is harmless beyond a reasonable doubt. *People v. Grace,* 55 P.3d 165 (Colo.App.2001)(defendant's absence harmless beyond a reasonable doubt when defense counsel was present, the trial court's response was proper, and defendant suffered no harm from his absence); *People v. Romero,* 767 P.2d 782 (Colo.App.1988)(defendant's absence harmless beyond a reasonable doubt when defense counsel was present and trial court's response was proper).

Although defendant contends that he "could have added something to the proceedings" and was severely prejudiced by being absent, these contentions are not supported by the record. Because the court's responses to the jury questions were proper, we conclude that defendant suffered no prejudice from his absence and that his absence was harmless beyond a reasonable doubt.

The judgment is affirmed.

Judge CASEBOLT and Judge NEY concur.