No. 23550.

JOSE ESTEBAN MARTINEZ v. THE PEOPLE OF THE STATE OF COLORADO.

(482 P.2d 375)

Decided March 22, 1971.

126

REYNOLDS, CONNELL and MORAN, ANTHONY F. PRINSTER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, ROBERT L. HOECKER, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE LEE.

PLAINTIFF in error, Jose Esteban Martinez, was con-

victed of burglary and theft in the district court of Boulder County.

The record shows that on August 28, 1967, the day on which the offenses were committed, defendant Martinez, Albert Cordova, John Quintana and Henry Williams, all of whom were inmates of the Boulder county jail, were out of jail assigned to a county work program. During their noon break they proceeded to Shakey's Pizza Parlor for lunch.

The business office at Shakey's is located off the main dining room area. This office had one door which was kept closed but unlocked during business hours. The office door had an opaque colored glass through which the inner light could be seen. This was kept burning 24 hours a day. The office contained a floor safe where operating funds were kept. The safe was customarily unlocked during business hours and was unlocked on that day.

The four men remained in the restaurant approximately one and one-half hours. Business was light and the manager left the premises in the charge of his assistant who was the sole employee in Shakey's when the following events took place. Shortly after 1 p.m., the assistant manager noticed the office light was off. He left the service counter and proceeded toward the office. Just as he was about to enter, the door opened and out walked Martinez who, when asked concerning his presence in the office, explained that he was looking for a telephone. Martinez walked back to the service counter with the assistant manager and ordered a glass of beer which he paid for with a five-dollar bill. The assistant manager hesitated to immediately check the office safe. Two or three minutes later, however, he did so and discovered $147 missing. When he came out of the office, he found Martinez had left the premises. The other three, upon learning of the assistant manager's suspicions, immediately left also. All were apprehended shortly thereafter.

The four were placed in two lineups consisting of two persons each. The assistant manager was able to make only a tentative identification of Martinez. However, at the trial he made a positive in-court identification of the defendant, based on his observations of the defendant while in the restaurant.

Thereafter, Lt. Strawn of the Sheriff's Department interrogated each of the four suspects separately. He first talked to Williams, then to Quintana, and Cordova in that order, and lastly to Martinez. Strawn suggested to each of the first three that they were implicated in the offenses and would be charged unless Martinez confessed. It was further suggested that they talk it over with Martinez. Strawn then talked to Martinez. He advised him of his *Miranda* rights. Martinez refused to talk and was returned to his cell. Cordova, Quintana and Williams each talked to Martinez about the accusations, urging him to tell the truth and admit to the theft. Although there was no physical violence, admittedly loud language was employed to persuade Martinez to confess.

Approximately one hour later, Lt. Strawn received word that Martinez wanted to talk to him. Strawn did not reiterate the *Miranda* warnings at that time. Martinez then made the incriminating admissions and volunteered to show where he had hidden the money. The officers then searched the scene but were unable to locate the money taken.

Martinez did not have the benefit of counsel at the lineup procedure. He did not request an attorney at any time during the interrogation procedures and he had none at the time he made the incriminating admissions.

I.

Martinez contends that the trial court erred in admitting the in-court identification evidence without first conducting an *in camera* hearing concerning the lineup to determine whether the lineup procedures were fundamentally fair and not conducive to irreparable in-court misidentification. He does not, however, point out in any

particular how the lineup procedures were unfair or improper.

Although it was procedurally improper for the court to admit the in-court identification evidence without first conducting an *in camera* hearing on the lineup procedures, we find that the record supports an informed judgment based on clear and convincing evidence that the in-court identification had an independent source separate and apart from the lineup. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; *Schott v. People,* 174 Colo. 15, 482 P.2d 101; *Neighbors v. People,* 171 Colo. 349, 467 P.2d 804. The assistant manager's in-court identification was founded upon his close personal observation of Martinez over an extended period of time while in the restaurant, his face-to-face confrontation at the office door, his contact with Martinez at the service bar, and his observation of a tattoo on Martinez' right arm. When asked if the lineup helped him in his in-court identification, the witness answered: "No, it hinders me more than it helps me." Martinez was wearing different clothing at the lineup than when in Shakey's. Also, he wore glasses at the lineup but had none at the restaurant. Furthermore, he changed his hair style from that previously worn. Additionally, only approximately forty-five minutes had elapsed from the time Martinez left the restaurant and the time the lineup was conducted. The witness stated in response to a direct question that his in-court identification was not based on the lineup.

II.

Martinez' second contention of error is that the trial court improperly admitted his statements and admissions into evidence in that they were made as a result of improper psychological coercion; and, further, that they were obtained without proper *Miranda* warnings.

A *Jackson v. Denno* hearing was held by the court. Defendant did not testify. Lt. Strawn provided the evidence for the People and John Quintana testified for Martinez. As heretofore noted, defendant had been prop-

erly advised initially of his *Miranda* rights and, when he chose not to talk, the interrogation was immediately discontinued and he was returned to his jail cell. Thereupon, he was confronted by his fellow prisoners (at the previous suggestion of the interrogating officer) and he was verbally persuaded to admit the truth and confess to the crimes. Within an hour after his initial confrontation at which he refused to make any *statements, he* indicated he wanted to make a deal. He inquired concerning the charges that would be filed against him and was advised by Lt. Strawn. He wanted to know if it would go any easier on him if he showed Strawn where the money was, and he thereafter admitted the theft.

The trial court did not make any findings from the evidence thus presented concerning the crucial matters then at issue: first, whether the statements were given freely and voluntarily without any improper compelling influences, and, second, whether the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed2d 694. The court merely concluded after the *in camera* hearing: "No, I will have to overrule your objection. The evidence is clearly admissible."

■■ It has been determined that before a trial court may find that statements, to which objections have been made, are admissible in evidence, the court must make findings of fact and law that the statements under consideration were voluntarily given with full understanding of the accused's rights. *Goddard v. People,* 172 Colo. 498, 474 P.2d 210; *Velarde v. People,* 171 Colo. 261, 466 P.2d 919; *Compton v. People,* 166 Colo. 419, 444 P.2d 263. The declaration of the court in the present case, being merely a conclusion of law, does not satisfy the foregoing requirements.

It becomes necessary, therefore, to reverse and remand the case to the trial court for a second *in camera* hearing, after which specific findings of fact shall be made on the

issues of voluntariness and knowing and intelligent waiver of the privilege against self-incrimination and the right to counsel. If the court finds that the statements were freely and voluntarily given by Martinez, without any improper compelling or coercive influence, and that he knowingly and intelligently waived his privilege against self-incrimination and his right to counsel, then the conviction and verdict should be reinstated. Otherwise, defendant should be granted a new trial.

The judgment is reversed and the cause remanded with directions to conduct further proceedings consonant with the views herein expressed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE DAY and MR. JUSTICE HODGES concur.