**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 18 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RICKY BENJAMIN,

               Petitioner - Appellant,

v.

CONNIE GIPSON, Warden,

               Respondent - Appellee.

No. 12-56664

D.C. No. 2:11-cv-02899-JVS-SH

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted February 2, 2016
Pasadena, California

Before: REINHARDT, PAEZ, and M. SMITH, Circuit Judges.

This is an extremely troubling case. Ricky Benjamin appeals the district

court's denial of his pro se habeas petition, which challenges his 2006 convictions

for first-degree murder and attempted second-degree robbery. We review under

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and we affirm.

**1.** Benjamin first argues that insufficient evidence existed for the jury to conclude that he committed the offenses. The state offered the following evidence relevant to his identity as a perpetrator. First, the victim's sister Angelica, who was 11 years old at the time of the offenses, testified that she saw a man with a gun jump on the hood of her brother's car, that she turned to grab a phone, and then heard, but did not see, a shot fired. Because the man was wearing a hood and baseball cap, she said that she saw only the bottom half of his face. Angelica first identified another man as the perpetrator after viewing a photo lineup. She initially reiterated that identification at the preliminary hearing, but, after a lunch break, recanted her testimony and identified Benjamin. At the trial, she explained that she had switched her identification to Benjamin during lunchtime because his chin was "a bit more full than the other guy's" (she had stated at the preliminary hearing that she saw only the shooter's chin). A neighbor testified that she heard a single shot and saw only a man's back, but not his face, as he ran from the scene. Relying solely on the man's "height" and "build," the neighbor picked Benjamin out of a photo lineup and reiterated that identification at trial. The victim's brother Moses also testified, saying that Benjamin told him that someone else in the neighborhood

2

had committed the crime and that Moses could borrow Benjamin's guns to get revenge. Moses further testified that Benjamin described one of his guns as a .380 caliber, which is the same caliber as the murder weapon. The state also introduced the testimony of Denise White, a self-described "crackhead" who said that she overheard Benjamin say that he shot "that *ese*," which White defined as referring to a "white boy" or "Hispanic person." When asked how she could be sure which shooting Benjamin was talking about, White stated that she was sure because she had witnessed him fleeing after the shooting, although her description of the incident was inconsistent with the rest of the state's evidence.[1] Finally, the state introduced forensic evidence demonstrating that a number of individuals' DNA was present on the headband of a baseball cap found at the scene and that Benjamin, who lived in the neighborhood, was one of those individuals.

Our review of a sufficiency of the evidence challenge under AEDPA is subject to the "twice-deferential standard" of *Jackson v. Virginia*, 443 U.S. 307 (1979), and AEDPA. *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). The

---

[1] White maintained that the shooting happened at midnight, while all other witnesses testified that it happened between 6 and 7PM, during daylight hours. White also said that she heard "two, three, maybe four" shots, while the bulk of the evidence, especially the forensic evidence, was that only one shot had been fired. Finally, White testified that she saw two perpetrators fleeing in a green car, while another eyewitness, who observed a perpetrator getting into a getaway car, testified unequivocally that the car was white.

evidence of Benjamin's identity as a participant in the crimes is weak, as much of the testimony offered by the state was either of low probative value or suffered from clear credibility defects (or both).  Under *Jackson* and AEDPA, however, we are not permitted to weigh witness credibility.  *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).  We therefore are compelled to hold that "the state court's determination that a rational jury could have found that there was sufficient evidence of guilt . . . was [not] objectively unreasonable."  *Boyer v. Belleque*, 659 F.3d 957, 965 (9th Cir. 2013).

**2.** Benjamin next argues that his counsel was ineffective for failing to move to suppress Angelica's eyewitness identification.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Benjamin's counsel's performance was not deficient, however, because any such motion would likely have been unsuccessful.  Although Angelica's identification was exceedingly unreliable, courts suppress eyewitness identifications only when they are the product of improperly suggestive conduct by the police.  *See Perry v. New Hampshire*, 132 S. Ct. 716, 721 (2012).[2]  Because

---

[2] Although *Perry* was decided after Benjamin's trial, California courts appear to have made the same requirement explicit prior to *Perry*.  *See, e.g.*, *People v. Peggese*, 102 Cal. App. 3d 415, 422 (1980); *People v. Boothe*, 65 Cal. App. 3d 685, 691 (1977).

4

there is no evidence of such conduct in this case, we affirm the district court's denial of Benjamin's ineffective assistance of counsel claim.

**3.** Benjamin's next claim is a Confrontation Clause challenge to the admission of the DNA evidence. At trial, the state introduced the inculpatory DNA evidence through the testimony of an analyst who had not actually conducted the DNA testing. Benjamin argues that this arrangement violated *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). The state argues that the state court was not unreasonable in determining that *Melendez-Diaz* is distinguishable.[3] In *Melendez-Diaz*, no analyst testified as to the procedures underlying the forensic reports. 557 U.S. at 308-09. Here, by contrast, a forensic analyst familiar with the DNA laboratory's procedures testified and was subject to cross-examination. Accordingly, the state court's decision was not an unreasonable application of *Melendez-Diaz*. *See Flournoy v. Small*, 681 F.3d 1000, 1005 (9th Cir. 2012) (noting that *Melendez-Diaz* did not address "the degree of proximity the testifying witness must have to the scientific test").

**4.** Finally, Benjamin asks that we remand his case to the district court so that he may seek leave to amend his habeas petition to add newly-discovered

---

[3] The Supreme Court had yet to decide *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), and *Williams v. Illinois*, 132 S. Ct. 2221 (2012), when Benjamin's convictions became final in 2009.

claims. After Benjamin appealed the district court's denial of his pro se habeas petition, this court appointed counsel, who discovered two unraised potential claims: an ineffective assistance of counsel claim based on defense counsel's failure to present alibi evidence, and a *Brady*[4] claim based on the prosecution's failure to disclose exculpatory evidence, that "Denise White's" actual name is Rochelle Thomas, and that she served as a paid police informant in this and other cases.

Benjamin is currently pursuing these two new claims in state court. He seeks to amend his habeas petition to include them in case the state court should not grant relief so that the claims may be brought outside of AEDPA's limitations on "second or successive" petitions.[5] *See* 28 U.S.C. § 2244(b)(2).

A remand at this point, however, would be futile. Because the district court addressed the claims in Benjamin's pro se petition on the merits and issued final judgment, Benjamin cannot now amend his habeas petition without filing a Federal

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

[5] We grant Benjamin's motion for judicial notice, supplemental motion for judicial notice, and motion to file under seal because the attachments to these motions arise out of "proceedings in other courts . . . [that] have a direct relation to matters at issue" in this proceeding. *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011). The motion to seal is granted subject to reconsideration should further proceedings be initiated in this court.

Rule of Civil Procedure 60(b) motion for relief from the judgment. *See Bonin v. Vasquez*, 999 F.2d 425, 427 (9th Cir. 1993) ("Because final judgment already had been entered . . . when Bonin first sought to raise six new issues, the district court properly construed Bonin's motion as a request for relief from the judgment pursuant to Rule 60(b)."). The time in which Benjamin could file such a motion has elapsed. *See* Fed. R. Civ. Pro. 60(c)(1). Even if Benjamin could file a Rule 60(b) motion, the Supreme Court has held that such motions that raise new "claims" should ordinarily be considered under AEDPA's provisions governing "second or successive" petitions. *Gonzalez v. Crosby*, 545 U.S. 524, 530-31 (2005).

The result in this case is troubling for many reasons, including the question regarding the sufficiency of the evidence. It is especially troubling, however, with respect to Benjamin's *Brady* claim. Given the minimal evidence offered at trial and the state's alleged failure to disclose critical exculpatory evidence, we note that there may well be a reasonable probability that the result of the jury trial would have been different absent the *Brady* violation. Benjamin could not have included any such claim in his first habeas petition, however, because the state allegedly failed, in violation of *Brady*, to disclose material exculpatory information to the defense, and Benjamin did not learn of this fact until after the time within which to

7

file a habeas claim had expired.  Should the case return to this court at any point, we might be required to consider whether Benjamin's new claims satisfy the provisions governing "second or successive" petitions or, in the case of the *Brady* claim, whether that claim is excused from satisfying those requirements.  *See United States v. Lopez*, 577 F.3d 1053, 1064-67 (9th Cir. 2009) (leaving open the question whether material *Brady* claims are excused from satisfying the provisions governing "second or successive" petitions).  The panel retains jurisdiction over any further claims that may be placed before this court as a result of the convictions we consider today.

**AFFIRMED**.

***BENJAMIN v GIPSON 12-56664***

M. SMITH, Circuit Judge, concurring in part and dissenting in part:

I concur in all but the final paragraph of the memorandum disposition, with which I disagree for the following reasons: (a) Every legal issue before us has been disposed of in the previous paragraphs of the memorandum disposition, so the last paragraph is wholly unnecessary to the disposition of this case; (b) Under AEDPA, we are generally required to defer to the state courts in the first instance, but the final paragraph of this memorandum disposition seems clearly designed to signal to any state court hereafter considering the matter, as well as the attorneys involved, the results favored by the panel majority concerning the *Brady* claim and whether any new claims satisfy the provisions governing "second or successive" petitions; and (c) to make certain the state courts "get the message," the panel majority has indicated that the panel will retain jurisdiction over the case, even though there would normally be no reason for the panel to do so.

Accordingly, I dissent from the last paragraph of this memorandum disposition.