JUSTICE MÁRQUEZ delivered the Opinion of the Court.
¶1 Eyewitness identifications are extremely powerful evidence. "[T]here is almost nothing more convincing than a live human being who takes the stand, points a finger at the defendant, and says 'That's the one!' " Watkins v. Sowders , 449 U.S. 341, 352, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) (Brennan, J., dissenting) (quoting Elizabeth F. Loftus, Eyewitness Testimony 19 (1979)). But such evidence is also fallible. Indeed, "the annals of criminal law are rife with instances of mistaken identification." United States v. Wade , 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Precisely because identification testimony is so persuasive, a mistaken identification can lead to a wrongful conviction.
¶2 Criminal defendants therefore have access to certain safeguards at trial to test the *1108 reliability of identification evidence, including the right to counsel and the opportunity to cross-examine prosecution witnesses. The U.S. Supreme Court has also recognized "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." Perry v. New Hampshire , 565 U.S. 228, 232, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012). Specifically, in Neil v. Biggers , the Court held that where the State seeks either to admit evidence of a resulting out-of-court identification or to elicit a live identification from the witness at trial, due process requires the trial court to assess whether, under the totality of the circumstances, the identification is nevertheless reliable. 409 U.S. 188, 198-99, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
¶3 Here, the People charged James Garner for a bar shooting that injured three brothers. The People's case hinged on the brothers' live identifications of Garner at trial almost three years later, though none of them could identify Garner as the shooter in an earlier photographic array. The core question before us is whether, in these circumstances, Biggers required the trial court to assess the reliability of the brothers' first-time in-court identifications before allowing them in front of the jury.
¶4 Garner argues that particularly given the brothers' inability to identify him before trial, their in-court identifications were the product of impermissibly suggestive circumstances, and the trial court should have suppressed them under both Biggers and the Colorado Rules of Evidence. The People respond that where an in-court identification does not stem from a constitutionally defective out-of-court identification procedure, the court need not screen the in-court identification for reliability. Instead, any questions of reliability are for the jury to weigh.
¶5 We hold that where an in-court identification is not preceded by an impermissibly suggestive pretrial identification procedure arranged by law enforcement, and where nothing beyond the inherent suggestiveness of the ordinary courtroom setting made the in-court identification itself constitutionally suspect, due process does not require the trial court to assess the identification for reliability under Biggers . Because Garner alleges no impropriety regarding the pretrial photographic arrays, and the record reveals nothing unusually suggestive about the circumstances of the brothers' in-court identifications, we hold that the in-court identifications did not violate due process. We further hold that Garner's evidentiary arguments are unpreserved and that the trial court's admission of the identifications was not plain error under CRE 403, 602, or 701. Accordingly, we affirm the judgment of the court of appeals.
I. Facts and Procedural History
¶6 Near closing time at a Denver bar, two groups were celebrating birthdays. Christian Adame-Diaz was celebrating with his friend and his two brothers, Roberto and Arturo. The defendant, James Garner, was celebrating with his girlfriend and a few others. A fight broke out between the two groups. Someone pulled out a gun and fired six shots, injuring all three brothers. Following the shooting, Garner's group fled. Police recovered from the scene a pair of glasses splattered with Garner's blood, and a cell phone belonging to his girlfriend.
¶7 The People charged Garner with attempted murder of each brother; first-degree assault of Christian and Arturo; possession of a weapon by a previous offender;[1] and crime of violence sentence enhancers. The defense maintained that although Garner was at the bar on the night of the shooting, he was not the gunman.
¶8 During their investigation, police presented each brother with a photographic array that included Garner. Although Christian was able to identify Garner as someone present at the bar the night of the shooting, none of the brothers identified Garner as the gunman.
¶9 Despite failing to identify Garner in the pretrial photo arrays, all three brothers positively identified him almost three years later at trial as the shooter. Roberto testified first.
*1109 When asked whether he saw "anybody ... in the courtroom ... who shot at [him] on that particular evening," Roberto pointed at Garner and identified the color of his shirt. Roberto said the shooter's face was something he would never forget. The following morning, defense counsel moved to strike Roberto's in-court identification of Garner "as an impermissible one-on-one show[-]up identification, not comporting with the factors that are required." The trial court took the issue under advisement.
¶10 Arturo was the next brother to testify. When asked how long he had stayed at the bar that night, Arturo spontaneously identified Garner, saying, "[U]ntil this individual here fired at us. I don't want to see this guy I remember with the gun." Arturo said he was "a hundred percent sure that it was him." Defense counsel objected to "the unduly suggestive nature of th[e] one-on-one identification," but did not specify what made the in-court identification suggestive. The trial court overruled the objection.
¶11 Christian likewise spontaneously identified Garner in the courtroom. While testifying about the events leading up to the shooting, Christian pointed at Garner and said, "[H]im, James that's here, pushed [Roberto] against the chairs. When he fell on top of the chairs and tables, he took out his gun and started shooting my brother." Christian was positive that Garner was the gunman. Defense counsel again objected "as to a one-on-one prejudicial show-up lineup," and the trial court again overruled the objection.
¶12 Throughout trial, defense counsel questioned the reliability of the brothers' identification testimony. In her opening statement, counsel asked the jury to note how the brothers' descriptions of the shooter initially conflicted but began to cohere over time:
[T]he ... brothers ... give different descriptions of what they think the man looked like.... None of them describe a person with facial hair. Yet later they meet with the district attorneys and the detective at the bar, and suddenly all of their descriptions kind of start to line up a little bit more because now they are all describing a guy with facial hair.
¶13 Counsel highlighted these and many other discrepancies in the brothers' descriptions of the shooter through cross-examination, eliciting differences in the type, color, and detail of the shooter's clothing, and whether he had facial hair or wore glasses.
¶14 Defense counsel also confronted each brother with his earlier failure to identify Garner as the shooter in a photographic array. For example, Christian acknowledged on cross-examination that when he saw Garner in the photo array, he told the detective, "He was there but he was not the shooter." And counsel engaged in the following exchange with Roberto:
Q. Now, you spoke with [the detective] again ... so that you could look at the [photo] lineup and see if you could find the man you'll never forget?
A. Yes.
Q. Which you did not?
A. No, I didn't do it.
¶15 During closing argument, defense counsel again sought to undermine the brothers' in-court identifications. She retraced for the jury how "[e]veryone's initial description of the shooter [wa]s different," and how the brothers' descriptions changed over time. Counsel also contrasted the brothers' inability to identify Garner in the photographic arrays with their certainty that he was the shooter when they saw him in court: "They can't identify James Garner at ... all, but when he's sitting in this chair, the one with the arrow over it, that's when they can say they're sure."
¶16 The jury convicted Garner of first-degree assault of Christian; second-degree assault of Arturo; and the lesser-included offenses of attempted reckless manslaughter of Christian and Arturo. The jury acquitted Garner of all attempted murder charges and of all the lesser-included charges against Roberto.
¶17 Garner appealed his convictions, arguing, as relevant here, that the admission of the brothers' in-court identifications violated his right to due process under the state and federal constitutions, and the requirements of CRE 403, 602, and 701.
*1110 ¶18 The court of appeals rejected these contentions. People v. Garner , 2015 COA 175, 439 P.3d 4. The court reasoned that in Neil v. Biggers , the U.S. Supreme Court articulated a test for "the exclusion of impermissible pretrial identifications and the in-court identifications that follow them." Garner , ¶ 11. The harm to be avoided, the division explained, is the risk that "the in-court identification is the product of the illegal lineup and not the observation of the defendant's wrongful act." Id. at ¶ 10. The court recited the factors identified in Biggers that a trial court should consider when assessing the reliability of an identification that follows an impermissibly suggestive confrontation procedure: (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the witness's level of certainty at the confrontation; and (5) the length of time between the crime and the confrontation. Id. at ¶ 11 (citing Biggers , 409 U.S. at 199, 93 S.Ct. 375 ).
¶19 The court of appeals next observed that the majority of courts have declined to extend Biggers to in-court identifications that do not follow unlawful pretrial identifications. Id. at ¶ 12. The court also observed that Colorado has not applied "[t]he exclusionary rule ... to in-court identifications alleged to be suggestive simply because of the typical trial setting." Id. at ¶ 13 (quoting People v. Monroe , 925 P.2d 767, 775 (Colo. 1996) ).
¶20 Relying on these principles, the court noted that although Garner's counsel "objected to ... the identifications on the basis that they were one-on-one show-ups," she offered no specific argument identifying the "constitutionally impermissible and suggestive circumstances other than the fact that the[ ] identifications occurred in the courtroom setting." Id. at ¶ 19. The court reasoned that, although "relevant and certainly grist for cross-examination," the brothers' inability to identify Garner as the shooter prior to trial did not, as a matter of law, "preclude [them] from making an identification upon seeing [Garner] in court." Id. at ¶ 21. The court explained that the brothers' previous failure to identify Garner went to the weight of their in-court identification testimony, rather than its admissibility. Id. at ¶¶ 21-22.
¶21 The court observed that "[e]ach identification was done in the presence of the jury," and that "defense counsel extensively cross-examined and impeached each of the brothers with their prior inconsistent statements and inability to identify defendant as the shooter from the photo lineup." Id. at ¶ 23. Thus, the court concluded, Garner "was given a full and fair opportunity to cross-examine each of the in-court identifications," and his right to due process was not violated. Id.
¶22 The court also summarily rejected Garner's "bare evidentiary arguments," noting that defense counsel had not made specific objections at trial under CRE 403, 602, or 701. Id. at ¶ 23 n.2. It concluded the trial court had not, in any event, abused its discretion under those rules in admitting the in-court identifications. Id.
¶23 We granted Garner's petition for a writ of certiorari to decide whether the in-court identifications were admitted in error.[2]
II. Analysis
¶24 Garner argues that the admission of the brothers' first-time in-court identifications violated his rights to due process and a fair trial. Importantly, he does not allege that the pretrial identification procedures were improper. Instead, he contends that the brothers' first-time in-court identifications were the product of impermissibly suggestive circumstances, particularly given the brothers' inability to identify Garner as the shooter in the pretrial photographic arrays. Therefore, he argues, the trial court was required to assess the reliability of these in-court identifications under the Biggers test before admitting them. Garner also contends the trial court should have excluded the identifications under CRE 403, 602, and 701, though he *1111 failed to make specific objections under those rules at trial.
¶25 The People respond that in-court identifications not preceded by improper pretrial identification procedures do not implicate a defendant's right to due process. The People observe that in-court identification procedures historically have not been cause for concern, and point out that in Perry v. New Hampshire , the U.S. Supreme Court held that the Biggers reliability test is not required for identifications that were not procured under suggestive circumstances arranged by law enforcement. Although they acknowledge that all in-court identifications entail some element of suggestion, they contend that any inherent suggestiveness of the courtroom setting is not attributable to law enforcement. The People thus argue the trial court was not required to prescreen the brothers' in-court identifications for reliability under the Biggers factors; rather, the reliability of their identification testimony was for the jury to weigh. Alternatively, the People argue that even under the Biggers factors, the identifications were sufficiently reliable to be admitted. Finally, the People contend that the trial court did not plainly err by failing, sua sponte, to exclude the challenged identifications under CRE 403, 602, and 701.
¶26 We begin our analysis by tracing the U.S. Supreme Court's development of the test articulated in Biggers . We then observe that in the wake of Biggers , courts have been divided on whether the Biggers reliability analysis applies to an in-court identification not preceded by an improper out-of-court identification procedure. We also note that in Colorado, we have recognized that certain in-court identifications might raise due process concerns, but we have declined to require prescreening of identifications alleged to be suggestive based merely on the ordinary courtroom setting.
¶27 Next, we turn to a discussion of the U.S. Supreme Court's decision in Perry . There, the Court held that out-of-court identifications that are not a product of suggestive circumstances arranged by law enforcement do not require judicial prescreening for reliability under Biggers . Though the Supreme Court in Perry did not squarely address whether Biggers applies to first-time in-court identifications, its reasoning has significantly reshaped that debate: the clear majority of courts to consider the issue since Perry have concluded that Biggers does not require trial courts to screen first-time in-court identifications for reliability. These courts have concluded that for defendants identified for the first time in court, the ordinary safeguards of the trial process are sufficient to satisfy due process, and the reliability of the identification testimony is for the jury to weigh.
¶28 Relying on the Supreme Court's reasoning in Perry , we hold that where an in-court identification is not preceded by an impermissibly suggestive pretrial identification procedure arranged by law enforcement, and where nothing beyond the inherent suggestiveness of the ordinary courtroom setting made the in-court identification itself constitutionally suspect, due process does not require the trial court to assess the identification for reliability under Biggers . Because Garner does not allege that the pretrial identification procedures were improper, and the record reveals nothing unusually suggestive about the circumstances surrounding the brothers' in-court identifications, we hold that their admission did not violate due process. We further hold that the trial court's admission of the identifications was not plain error under CRE 403, 602, or 701. Accordingly, we affirm the judgment of the court of appeals.
A. Suggestive Out-of-Court Identifications and Subsequent In-Court Identifications
¶29 Historically, the questionability of eyewitness identification testimony went to the weight of such evidence and not its admissibility. But in a trilogy of cases decided in 1967, United States v. Wade , 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Gilbert v. California , 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and Stovall v. Denno , 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the U.S. Supreme Court held that in certain circumstances, an out-of-court identification obtained by means of improper police *1112 procedures, as well as any subsequent in-court identification tainted by the original improper one, should be excluded from the jury's consideration altogether.
¶30 In both Wade and Gilbert , witnesses identified the defendant at a post-indictment lineup conducted in the absence of the defendant's counsel. Wade , 388 U.S. at 219-20, 87 S.Ct. 1926 ; Gilbert , 388 U.S. at 269-70, 87 S.Ct. 1951. In Wade , the Court considered whether the witnesses' subsequent courtroom identifications of the defendant at trial should be excluded from evidence. 388 U.S. at 219-20, 87 S.Ct. 1926. In Gilbert , the prosecution sought to offer not only the witnesses' courtroom identifications, but also testimony relating their initial identifications at the pretrial lineup. 388 U.S. at 271, 87 S.Ct. 1951.
¶31 In both cases, the Court held that the Sixth Amendment right to counsel applies to a post-indictment lineup because it is a critical stage requiring the presence of counsel to preserve the defendant's basic right to a fair trial. Wade , 388 U.S. at 236-37, 87 S.Ct. 1926 ; accord Gilbert , 388 U.S. at 272, 87 S.Ct. 1951. In so doing, the Court expressed concern about "the high incidence of miscarriage of justice from mistaken identification" resulting from "the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." Wade , 388 U.S. at 228, 87 S.Ct. 1926. The Court thus envisioned the presence of defense counsel as the antidote to potentially suggestive pretrial identification procedures-both to avert prejudice at the lineup itself, and to preserve the accused's meaningful ability to attack the credibility of the witness's resulting courtroom identification at trial. See id. at 228-37, 87 S.Ct. 1926.
¶32 The Court then turned to the proper remedy for the Sixth Amendment violations. As to the pretrial identification testimony the State sought to admit in Gilbert , the Court reasoned that such evidence was the "direct result of the illegal lineup 'come at by exploitation of [ ]the primary[ ] illegality,' " and only the sanction of automatic exclusion could assure law enforcement authorities' respect for the accused's right to presence of counsel. 388 U.S. at 272-73, 87 S.Ct. 1951 (quoting Wong Sun v. United States , 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ).
¶33 But as to the in-court identifications in both Wade and Gilbert , the Court reasoned that a per se exclusionary rule would be unjustified. Wade , 388 U.S. at 240, 87 S.Ct. 1926; accord Gilbert , 388 U.S. at 272, 87 S.Ct. 1951. Instead, the Court held that the prosecution should be given an opportunity to establish by clear and convincing evidence that the witnesses' in-court identifications were based upon observations of the defendant other than during the lineup. Wade , 388 U.S. at 240, 87 S.Ct. 1926 ; Gilbert , 388 U.S. at 272, 87 S.Ct. 1951. The relevant question, the Court explained, was "[w]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wade , 388 U.S. at 241, 87 S.Ct. 1926 (quoting John MacArthur Maguire, Evidence of Guilt 221 (1959)). An in-court identification free from the taint of any improper pretrial procedure could thus properly go to the jury.
¶34 Finally, in Stovall , the Court held that the exclusionary rule identified in Wade and Gilbert did not apply retroactively. Stovall , 388 U.S. at 296-301, 87 S.Ct. 1967. But in setting forth its reasons for giving those cases only prospective application, the Court made clear that a defendant could nevertheless seek to prove-independent of any Sixth Amendment violation-that a police identification procedure was so "unnecessarily suggestive and conducive to irreparable mistaken identification" as to violate his Fourteenth Amendment right to due process. Id. at 301-02, 87 S.Ct. 1967. There, the victim-witness identified Stovall in a pretrial show-up conducted in her hospital room, where Stovall stood handcuffed to an officer and was the only black man present. Id. at 295, 87 S.Ct. 1967. Ultimately, the Court found no due process violation, concluding that the highly suggestive procedure in that case was justified because no one knew how long the victim-witness might live. Id. at 301-02, 87 S.Ct. 1967. But importantly, Stovall recognized a *1113 distinct due process protection from unnecessarily suggestive out-of-court identification procedures.
¶35 A year later, in Simmons v. United States , the Supreme Court again considered the due process protection against suggestive pretrial identification procedures. 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In that case, the prosecution relied on in-court identifications that were allegedly tainted by the witnesses' previous exposure to a suggestive photographic array. Id. at 381-83, 88 S.Ct. 967. The Simmons Court acknowledged that the police's improper use of photographs can lead to a mistaken identification, and that a witness "thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of [any] subsequent ... courtroom identification." Id. at 383-84, 88 S.Ct. 967. But the Court also noted that the danger of such a technique can be mitigated through cross-examination at trial. Id. at 384, 88 S.Ct. 967. Thus, it declined to prohibit the already widespread use of photographic arrays. Id. Instead, it held that a conviction based on in-court identification at trial following a pretrial identification by photograph will be set aside where the pretrial identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. The Court ultimately declined to overturn Simmons' conviction, reasoning that the identification procedure used in that case was justified, and that there was little chance that it led to a misidentification. Id. at 384-85, 88 S.Ct. 967.
¶36 In Biggers , the Supreme Court synthesized its prior cases and established the approach to be used to determine whether due process requires suppression of an identification tainted by suggestive procedures. In that case, the prosecution's evidence included a victim-witness's testimony regarding her visual and voice identification of the defendant at a station-house show-up. 409 U.S. at 189, 195-96, 93 S.Ct. 375. In discerning the guidelines that had emerged from its prior cases, the Court emphasized that "the primary evil to be avoided [from a suggestive confrontation] is 'a very substantial likelihood of irreparable misidentification.' " Id. at 198, 93 S.Ct. 375 (quoting Simmons , 390 U.S. at 384, 88 S.Ct. 967 ). That likelihood of misidentification is what violates a defendant's right to due process, the Court explained; it is what justifies the exclusion of an in-court identification made in the wake of a suggestive out-of-court identification, as well as testimony about the out-of-court identification itself. See id.
¶37 However, the Court rejected the idea that unnecessary suggestiveness alone requires the exclusion of evidence. Id. Instead, the Court held that the proper question is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199, 93 S.Ct. 375. The Court then outlined five factors to be considered in evaluating the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty the witness demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. Id. at 199-200, 93 S.Ct. 375. Applying these factors, the Court concluded there was no substantial likelihood of misidentification, and the evidence was properly allowed to go to the jury. Id. at 201, 93 S.Ct. 375.
¶38 A few years later, in Manson v. Brathwaite , the Court clarified that the Biggers analysis applied to out-of-court confrontations conducted both pre- and post- Stovall . 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The Court again rejected a per se rule of exclusion whenever law enforcement officers use improper identification procedures, reemphasizing that "reliability is the linchpin in determining the admissibility of identification testimony" and explaining that the five factors outlined in Biggers are to be weighed against the "corrupting effect of the suggestive identification itself." Id. at 111-14, 97 S.Ct. 2243. Ultimately, the Court could not conclude that there was a substantial likelihood of misidentification in that case, and "[s]hort of that point, such evidence [was] for the jury to weigh." Id. at 116, 97 S.Ct. 2243.
*1114 The Court observed that it was "content to rely upon the good sense and judgment of American juries," noting that evidence containing "some element of untrustworthiness is customary grist for the jury mill," and that juries can "measure intelligently the weight of identification testimony that has some questionable feature." Id.
B. First-Time In-Court Identifications
¶39 Biggers and Brathwaite did not answer the question before us today: whether a first-time in-court identification not preceded by an impermissibly suggestive pretrial identification procedure arranged by law enforcement should be subject to judicial screening under Biggers . In the wake of those cases, courts were split on the issue. Many began to evaluate the reliability of such first-time in-court identifications under Biggers ,[3] while still many others declined to do so.[4]
¶40 Courts that applied Biggers to such first-time in-court identifications tended to reason that Biggers was concerned primarily with preventing convictions based on mistaken identification, a rationale that supported applying its analysis to all eyewitness identifications, whether obtained before or during trial. See, e.g. , United States v. Hill , 967 F.2d 226, 232 (6th Cir. 1992) ("All of the concerns that underlie the Biggers analysis, including the degree of suggestiveness, the chance of mistake, and the threat to due process are no less applicable when the identification takes place for the first time at trial.").
¶41 Meanwhile, those courts that declined to apply Biggers reasoned primarily that unlike suggestive out-of-court identifications or in-court identifications tainted by earlier suggestive procedures, first-time in-court identifications take place before the jury and are subject to all the ordinary protections of a criminal trial:
The concern with in-court identification, where there has been suggestive pretrial identification, is that the witness later identifies the person in court, not from his or her recollection of observations at the time of the crime charged, but from the suggestive pretrial identification. Because the jurors are not present to observe the pretrial identification, they are not able to observe the witness making that initial identification. The certainty or hesitation of the witness when making the identification, the witness's facial expressions, voice inflection, body language, and the other normal observations one makes in everyday life when judging the reliability of a person's statements, are not available to the jury during this pretrial proceeding. There is a danger that the identification in court may only be a confirmation of the earlier identification, with much greater certainty expressed in court than initially.
When the initial identification is in court ... [t]he jury can observe the witness during the identification process and is able to evaluate the reliability of the initial identification.
United States v. Domina , 784 F.2d 1361, 1368 (9th Cir. 1986) (internal citations omitted); accord Ralston v. State , 251 Ga. 682, 309 S.E.2d 135, 136-37 (1983) ; State v. Lewis , 363 S.C. 37, 609 S.E.2d 515, 518 (2005).
¶42 Notably, even among the courts that deemed Biggers applicable to first-time in-court identifications, many ultimately concluded that the typical courtroom identification procedure posed no constitutional problem.
*1115 See, e.g. , Hogan v. State , 908 P.2d 925, 929 (Wyo. 1995) ("[W]ithout more, the mere exposure of the accused to a witness in the suggestive setting of a criminal trial does not amount to the sort of impermissible confrontation with which the due process clause is concerned." (quoting Middleton v. United States , 401 A.2d 109, 132 (D.C. 1979) )).
¶43 Colorado was in this camp. We recognized in People v. Walker "that under some circumstances an in-court identification may constitute an impermissible one-on-one confrontation which is unnecessarily suggestive and conducive to irreparable mistaken identification." 666 P.2d 113, 119 (Colo. 1983) (likening a witness's first-time confrontation with a defendant in court to a one-on-one show-up). Although the details of the in-court identification procedure in Walker are somewhat ambiguous, the prosecutor apparently "told [the witness], and she assumed, that the defendant on trial was the shotgun-wielding robber." Id. at 120.
¶44 We later clarified, however, that exclusion is not required for "in-court identifications alleged to be suggestive simply because of the typical trial setting." People v. Monroe , 925 P.2d 767, 775 (Colo. 1996).[5] Distinguishing Walker , we noted several factors that made the identification procedure in Monroe comparatively less suspect, including that "[t]he prosecution made no improper remarks to the witness." Monroe , 925 P.2d at 774. We also emphasized the role of counsel in forestalling or exposing any suggestiveness in the identification and observed that special procedures may be appropriate in certain circumstances. Id. (acknowledging the trial court's discretion to order in-person lineups or Crim. P. 41.1 nontestimonial identifications).
C. Perry and Its Wake
1. Perry v. New Hampshire
¶45 More recently, in Perry v. New Hampshire , the Supreme Court considered whether Biggers requires a trial court to assess the reliability of an out-of-court identification obtained under suggestive circumstances not arranged by law enforcement. 565 U.S. 228, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012). Although Perry did not directly answer whether Biggers applies to a first-time in-court identification, the Court's reasoning significantly reshaped the terms of that debate. We therefore discuss Perry and its rationale in some detail.
¶46 In Perry , police received a call that someone was trying to break into cars in the parking lot of an apartment building. 565 U.S. at 233, 132 S.Ct. 716. The responding officer encountered Perry in the lot, holding two car-stereo amplifiers. Id. A second officer remained with Perry while the first went upstairs to talk to a building resident who witnessed the break-in. Id. at 234, 132 S.Ct. 716. When the officer asked the resident for a description of the perpetrator, she spontaneously pointed to her window and said the person she had seen breaking into a car was standing in the parking lot next to the other officer. Id. The resident was later unable to identify Perry in a photographic array. Id. Perry moved to suppress evidence of the resident's out-of-court identification on due process grounds, arguing that it amounted to an impermissible one-person show-up. Id. at 234-35, 132 S.Ct. 716. The court denied the motion, reasoning that because the out-of-court identification did not result from an unnecessarily suggestive procedure manufactured by the police, the reliability of the testimony was for the jury to determine. Id. at 235, 132 S.Ct. 716.
¶47 After the jury convicted him of theft, Perry appealed, arguing that the suggestive circumstances surrounding the identification were enough to trigger the trial court's duty to evaluate the identification for reliability *1116 under Biggers before allowing the jury to consider it. Id. at 236, 132 S.Ct. 716. Perry's argument hinged largely on the Court's statement in Brathwaite that "reliability is the linchpin in determining the admissibility of identification testimony." Id. at 240, 132 S.Ct. 716 (quoting Brathwaite , 432 U.S. at 114, 97 S.Ct. 2243 ). If "reliability is the linchpin" of admissibility under the Due Process Clause, Perry argued, then the Biggers reliability analysis should be triggered regardless of whether police were responsible for creating the suggestive circumstances that marred the identification. Id. at 240-41, 132 S.Ct. 716.
¶48 The Supreme Court rejected Perry's reading of its precedent, observing that he had "removed [the Court's] statement in Brathwaite from its mooring." Id. at 241, 132 S.Ct. 716. Read in context, the Court explained, its reference to reliability appeared in the Court's discussion of the appropriate remedy "when the police use an unnecessarily suggestive identification procedure ." Id. That remedy-the judicial screen for reliability-was adopted in lieu of an automatic exclusionary rule and, importantly, "comes into play only after the defendant establishes improper police conduct." Id. Far from suggesting that the risk of mistaken identification alone was enough to require judicial prescreening of identification evidence, the Court had made clear that the "purpose of the check ... was to avoid depriving the jury of identification evidence that is reliable, notwithstanding improper police conduct." Id. (citing Brathwaite , 432 U.S. at 112-13, 97 S.Ct. 2243 ).
¶49 In other words, the Court explained, the Biggers reliability analysis is triggered "only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Id. at 238-39, 132 S.Ct. 716. Revisiting the 1967 trilogy of cases and Stovall 's progeny, the Court observed that each case had involved improper procedures arranged by police. See id. at 237-38, 240-43, 132 S.Ct. 716. It discerned from those cases that "[a] primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances ... is to deter law enforcement use of improper lineups, show[-]ups, and photo arrays in the first place." Id. at 241, 132 S.Ct. 716. The Court concluded that "[t]his deterrence rationale is inapposite in cases, like Perry's, in which the police engaged in no improper conduct." Id. at 242, 132 S.Ct. 716.
¶50 Importantly, the Court also expressed concern that to require trial courts to prescreen eyewitness evidence for reliability under Biggers "any time an identification is made under suggestive circumstances," id. at 240, 132 S.Ct. 716, would "open the door to judicial preview, under the banner of due process, of most, if not all, eyewitness identifications," id. at 243, 132 S.Ct. 716. This is because "most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do. " Id. at 244, 132 S.Ct. 716. (emphasis added).
¶51 The Court recognized the fallibility of eyewitness identifications, but underscored that "[t]he Constitution ... protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." Id. at 237, 132 S.Ct. 716. Among the safeguards built into the adversarial system are the requirement that guilt be proven beyond a reasonable doubt, the right to counsel, and the right to confront and cross-examine the prosecution's witnesses. Id. at 246, 132 S.Ct. 716. Other safeguards, such as the rules of evidence, cautionary jury instructions, and the ability to call expert witnesses to testify about the shortcomings of eyewitness testimony, provide additional protection against convictions based on questionable identification evidence. Id. at 247, 132 S.Ct. 716. Given the safeguards available in the ordinary criminal trial, the Court concluded that the Due Process Clause does not require a preliminary judicial inquiry into the reliability of eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement. Id. at 248, 132 S.Ct. 716.
2. After Perry
¶52 The Perry decision shifted the debate over whether Biggers requires judicial prescreening *1117 of first-time in-court identifications not preceded by suggestive out-of-court identification procedures. The clear majority of courts to consider the issue since Perry have concluded that, with respect to first-time in-court identifications, "the requirements of due process are satisfied in the ordinary protections of trial." United States v. Whatley , 719 F.3d 1206, 1216 (11th Cir. 2013).[6]
¶53 Tracking the reasoning in Perry , these courts have concluded that Biggers does not apply to the type of first-time in-court identifications at issue here for three main reasons. First, because an ordinary in-court identification procedure involves no improper law enforcement action, exclusion of an identification made under such circumstances would serve no deterrent purpose and would thus be inappropriate under Perry . See State v. Ramirez , 409 P.3d 902, 912 (N.M. 2017) (concluding defendant's objections based on the suggestiveness of the courtroom setting "do nothing to establish that the alleged taint ... if there was any, arose as a consequence of improper law enforcement influence"); see also Whatley , 719 F.3d at 1216.
¶54 Second, these courts reason that the Perry Court squarely rejected the notion that due process demands judicial prescreening of eyewitness identifications whenever they might be unreliable or the product of suggestion. See , e.g. , Fairley v. Commonwealth , 527 S.W.3d 792, 799 (Ky. 2017) ("Pointedly, the Court observed that many eyewitness identifications are problematic for any number of reasons including ... a witness's poor vision, the stress of the encounter, personal grudges and cross-racial perceptions...."). In so doing, the Court implicitly rejected the notion that due process requires judicial prescreening of all in-court identifications. See id. ; United States v. Thomas , 849 F.3d 906, 910-11 (10th Cir. 2017) ; Whatley , 719 F.3d at 1215-16.
¶55 Finally, like Perry , these courts place their trust in the ordinary safeguards of trial that are at their height when an identification procedure takes place in open court. See Young v. State , 374 P.3d 395, 411-12 (Alaska 2016) ("An in-court identification ... occurs in the presence of the judge, the jury, and the lawyers. The circumstances under which the identification is made are apparent. Defense counsel has the opportunity to identify firsthand the factors that make the identification suggestive and to highlight them for the jury."); see also Fairley , 527 S.W.3d at 799-800 ; Whatley , 719 F.3d at 1217 ; Ramirez , 409 P.3d at 913.
¶56 Notably, several courts that had previously applied Biggers to first-time in-court identifications shifted course after Perry , concluding that the Supreme Court's reasoning undercut their earlier decisions. The Eleventh Circuit observed:
When the Supreme Court made clear in Perry that Simmons , Biggers , and indeed "every case in the Stovall line" relied upon the involvement of law enforcement officials in the creation of the suggestive circumstances of the identification and that the Due Process Clause "does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement," the Court removed the foundation upon which [the Eleventh Circuit's prior cases] rested. And when the Supreme Court rejected the argument that the Due Process Clause requires judicial prescreening of all identifications obtained under suggestive circumstances and expressly disapproved the idea that in-court identifications would be subject to prescreening, it made clear that our precedents are no longer good law.
Whatley , 719 F.3d at 1216 (quoting Perry , 565 U.S. at 248, 132 S.Ct. 716 ). The Sixth *1118 Circuit, which had earlier held that "[a]ll of the concerns that underlie the Biggers analysis ... are no less applicable when the identification takes place for the first time at trial," Hill , 967 F.2d at 232, reversed course after Perry , observing that the Supreme Court had clarified that the "due process rights of defendants identified in the courtroom under suggestive circumstances are generally met through the ordinary protections in trial," United States v. Hughes , 562 F. App'x 393, 398 (6th Cir. 2014) ; see also Thomas , 849 F.3d at 911 (holding that prior Tenth Circuit precedent requiring judicial reliability assessment for first-time in-court identifications "is no longer viable" after Perry ). And although the Eighth Circuit had previously applied Biggers to first-time in-court identifications, see Rundell , 858 F.2d at 426-27, that court likewise concluded that Perry changed the legal landscape enough that it was not plain error for a trial court to fail to conduct a reliability analysis of a first-time in-court identification, see United States v. Shumpert , 889 F.3d 488, 491 (8th Cir. 2018).
¶57 A small minority of courts have applied Biggers to first-time in-court identifications since Perry was decided.[7] Notably, some of those cases do not address Perry or its rationale in their analysis at all. See, e.g. , United States v. Greene , 704 F.3d 298, 305-06 (4th Cir. 2013) ; City of Billings v. Nolan , 385 Mont. 190, 383 P.3d 219, 224-25 (2016).
¶58 Others of those courts have held that first-time in-court identifications will be excluded only where there is evidence of improper state action in eliciting the identification. For example, the U.S. District Court for the District of Columbia reasoned that an in-court identification procedure could be classified as state action under Perry , but that scrutiny under Biggers should be limited to those identifications where "the government d[oes] not have a basis for believing that the witness could make a reliable identification," and the identification is "merely an attempt to circumvent the due process constraints on one-man show[-]ups." United States v. Morgan , 248 F.Supp.3d 208, 213 & n.2 (D.D.C. 2017). The Seventh Circuit similarly declined to consider all first-time in-court identification procedures impermissibly suggestive, but specifically held that a witness's failure to identify a defendant in a pretrial photographic array is not enough to trigger a Biggers analysis. See Lee v. Foster , 750 F.3d 687, 691-92 (7th Cir. 2014).
¶59 In a 4-3 decision, the Connecticut Supreme Court agreed that Perry did not foreclose application of Biggers to first-time in-court identifications because a prosecutor's conduct could involve improper state action that should be deterred. State v. Dickson , 322 Conn. 410, 141 A.3d 810, 827-28 (2016). But the court went a step further, holding that in cases where identity is at issue, first-time in-court identifications are so suggestive that they necessarily "implicate due process protections and must be prescreened by the trial court." Id. at 822-25. The court dismissed the Supreme Court's reference in Perry to the dubiousness of subjecting all in-court identifications to a reliability analysis as a "passing, general reference" that could not foreclose the "conclusion that [such identifications] can implicate due process concerns under certain circumstances." Id. at 828. The court then delineated new procedures for prescreening first-time in-court identifications. Id. at 835. But see id. at 849-50 (Zarella, J., concurring) (doubting state court's authority to adopt prophylactic rules under the United States Constitution).
¶60 Massachusetts' Supreme Judicial Court has also created a rule limiting in-court identifications where the eyewitness either was not asked to make an out-of-court identification, Commonwealth v. Crayton , 470 Mass. 228, 21 N.E.3d 157, 164-73 (2014), or made an equivocal prior identification, Commonwealth v. Collins , 470 Mass. 255, 21 N.E.3d 528, 534 (2014). These decisions, however, turn on state "[c]ommon law principles of fairness," and explicitly acknowledge the court's departure from U.S. Supreme Court jurisprudence. Crayton , 21 N.E.3d at 165 *1119 (contrasting Massachusetts' test with the standard articulated in Perry ).
¶61 Finally, the First Circuit has declined to take a side in the debate, concluding that the defendant's arguments for exclusion in that case failed either way. United States v. Correa-Osorio , 784 F.3d 11, 19-22 (1st Cir. 2015). If Biggers did not apply, the in-court identification was permissible because the defendant "received all the safeguards Perry stamped sufficient to protect ... due process rights." Id. at 20. And even under Biggers , the First Circuit reasoned, the defendant "never gets to first base," because the only suggestion he alleged in his identification was "that he had a huge 'pick me' sign on him because ... he was the only male defendant at counsel table." Id. at 21-22. Correa-Osorio suggests that the gap between these two approaches to in-court identifications may not be so wide: absent evidence of unusual suggestion, most courts ultimately allow in-court identifications to go to the jury.
D. The Brothers' In-Court Identifications
¶62 Relying on the reasoning in Perry , we hold that where an in-court identification is not preceded by an impermissibly suggestive pretrial identification procedure arranged by law enforcement, and where nothing beyond the inherent suggestiveness of the ordinary courtroom setting made the in-court identification itself constitutionally suspect, due process does not require the trial court to assess the identification for reliability under Biggers .
¶63 We acknowledge the suggestiveness that inheres in identifying a defendant for the first time in court. But Perry rejected the argument that the Due Process Clause requires judicial prescreening for reliability "any time an identification is made under suggestive circumstances." 565 U.S. at 240, 132 S.Ct. 716. And we cannot ignore that the Supreme Court implicitly dismissed the notion that the suggestiveness inherent in "all in-court identifications" itself justifies a Biggers analysis. See id. at 244, 132 S.Ct. 716. We further agree with the Court's implication that such a broad rule would be unworkable. See id.
¶64 Although the prosecution functions as a state actor in connection with law enforcement, see Dickson , 141 A.3d at 824, Perry made clear that Biggers prescreening is not required in the absence of improper state action. See 565 U.S. at 241-42, 245, 132 S.Ct. 716. Indeed, "[t]he very purpose of the check ... [is] to avoid depriving the jury of identification evidence that is reliable, notwithstanding improper [law enforcement] conduct." Id. at 241, 132 S.Ct. 716. The inherent suggestiveness of an ordinary courtroom setting does not, without more, give rise to improper state action. The prosecution does not force the accused to sit at his counsel's table; instead, a defendant typically chooses to sit there (instead of in the audience) to assist in his defense. See Correa-Osorio , 784 F.3d at 20 ; Whatley , 719 F.3d at 1217. Because excluding a first-time identification made in an ordinary courtroom setting would not serve to deter improper law enforcement action, it would be inappropriate under Perry . See 565 U.S. at 241-42, 132 S.Ct. 716.
¶65 Nor are we inclined to require prescreening of in-court identifications in the narrower set of cases where, as here, the witness failed to identify the defendant in a pretrial procedure. Far from deterring improper state action, such a rule could disincentivize the use of properly conducted lineups and encourage the prosecution to try their luck in the (typically) suggestive trial setting. Moreover, there are legitimate reasons why a witness might be better able to identify a defendant at trial-live, and in person, with view of his expression and manner-than in the sort of photographic array used in this case.
¶66 Finally, Perry made clear that ordinary trial safeguards are the appropriate checks on identifications made under suggestive circumstances not attributable to improper law enforcement conduct. See id. at 246-48, 132 S.Ct. 716. Indeed, when a first-time identification takes place in court, counsel can expose-as defense counsel ably did in this case-any suggestiveness at work in the courtroom, cf. Wade , 388 U.S. at 230-31, 87 S.Ct. 1926, while juries can make contemporaneous assessments of credibility. And where a witness makes a first-time in-court *1120 identification, the witness's previous failure to identify the defendant presents ideal fodder for impeachment on cross-examination. In short, we cannot, consistent with Perry , conclude that in-court identifications alleged to be suggestive simply because of the ordinary trial setting must be screened rather than subjected to cross-examination and argument before the jury.
¶67 Though we decline to require judicial prescreening of all in-court identifications under Biggers , we recognize, as we did in Walker , that some courtroom identifications not stemming from improper out-of-court identification procedures might still raise constitutional concern. Here, however, because Garner alleges no impropriety in the pretrial photographic arrays nor anything unusually suggestive about the circumstances surrounding the brothers' subsequent in-court identifications, we hold that federal due process[8] did not require their exclusion at trial.[9]
E. Evidentiary Challenges
¶68 That due process does not require a reliability hearing under Biggers does not strip judges of their role as gatekeepers under the rules of evidence. See Perry , 565 U.S. at 245-47, 132 S.Ct. 716 (declining to "enlarge the domain of due process" in part because of existing safeguards against questionable identifications, including state and federal rules of evidence). Here, however, because Garner failed to object to the brothers' in-court identifications under any particular rule of evidence, we agree with the court of appeals that his evidentiary arguments are unpreserved. We cannot hold that it was plain error for the trial court not to exclude the identifications under CRE 403, 602, or 701 sua sponte.
III. Conclusion
¶69 We hold that where an in-court identification is not preceded by an impermissibly suggestive pretrial identification procedure arranged by law enforcement, and where nothing beyond the inherent suggestiveness of the ordinary courtroom setting made the in-court identification itself constitutionally suspect, due process does not require the trial court to assess the identification for reliability under Biggers . Because Garner alleges no impropriety regarding the pretrial photographic arrays, and the record reveals nothing unusually suggestive about the circumstances of the brothers' in-court identifications, we hold that the in-court identifications did not violate due process. We further hold that Garner's evidentiary arguments are unpreserved and that the trial court's admission of the identifications was not plain error under CRE 403, 602, or 701. Accordingly, we affirm the judgment of the court of appeals.
JUSTICE HART dissents, and JUSTICE HOOD and JUSTICE GABRIEL join in the dissent.

The People later dismissed this charge.

We granted certiorari to review the following issue:
1. Whether the court of appeals erred in affirming the trial court's admission of the in-court identifications of the defendant.

See, e.g. , United States v. Douglas , 489 F.3d 1117, 1126 (11th Cir. 2007) ; United States v. Murray , 65 F.3d 1161, 1168-69 (4th Cir. 1995) ; United States v. Hill , 967 F.2d 226, 232 (6th Cir. 1992) ; United States v. Rundell , 858 F.2d 425, 426-27 (8th Cir. 1988) (per curiam); United States v. Aigbevbolle , 772 F.2d 652, 654 (10th Cir. 1985) ; Code v. Montgomery , 725 F.2d 1316, 1319-20 (11th Cir. 1984) (per curiam); Isom v. State , 928 So.2d 840, 846-49 (Miss. 2006) ; In re R.W.S. , 728 N.W.2d 326, 335-36 (N.D. 2007) ; Commonwealth v. Silver, 499 Pa. 228, 452 A.2d 1328, 1331-32 (1982) ; State v. Drawn , 791 P.2d 890, 892-93 (Utah Ct. App. 1990) ; Hogan v. State , 908 P.2d 925, 928-29 (Wyo. 1995).

See, e.g. , United States v. Domina , 784 F.2d 1361, 1367-69 (9th Cir. 1986) ; Byrd v. State , 25 A.3d 761, 767 (Del. 2011) ; In re W.K., 323 A.2d 442, 444 (D.C. 1974) ; White v. State , 403 So.2d 331, 335 (Fla. 1981) ; Ralston v. State , 251 Ga. 682, 309 S.E.2d 135, 136-37 (1983) ; State v. King , 156 N.H. 371, 934 A.2d 556, 561 (2007) ; State v. Clausell , 121 N.J. 298, 580 A.2d 221, 235-36 (1990) ; State v. Green , 296 N.C. 183, 250 S.E.2d 197, 200 (1978) ; State v. Lewis , 363 S.C. 37, 609 S.E.2d 515, 518 (2005).

We observe that in several of our cases in this area, we seem to have conflated the Sixth Amendment and due process tests for admissibility, permitting a witness to make an in-court identification if based on an "independent source" distinct from any prior, unnecessarily suggestive identification procedure. See, e.g. , Monroe , 925 P.2d at 773-75 ; Walker , 666 P.2d at 119 ; Gimmy v. People , 645 P.2d 262, 270 (Colo. 1982) ; People v. Mattas , 645 P.2d 254, 261 (Colo. 1982) ; People v. Thatcher , 638 P.2d 760, 770 (Colo. 1981) ; People v. Smith , 620 P.2d 232, 238 n.11 (Colo. 1980) ; People v. Bowen , 176 Colo. 302, 490 P.2d 295, 298 (1971) ; Martinez v. People , 174 Colo. 125, 482 P.2d 375, 377 (1971).

See also, e.g. , United States v. Thomas , 849 F.3d 906, 910-11 (10th Cir. 2017) ; United States v. Hughes , 562 F. App'x 393, 398 (6th Cir. 2014) ; Young v. State , 374 P.3d 395, 411-12 (Alaska 2016) (but announcing new, more protective due process test under state law for future cases); Fairley v. Commonwealth , 527 S.W.3d 792, 798-800 (Ky. 2017) ; Galloway v. State , 122 So.3d 614, 664 (Miss. 2013) ; State v. Ramirez , 409 P.3d 902, 911-13 (N.M. 2017) ; State v. Hickman , 355 Or. 715, 330 P.3d 551, 571-72 (2014) ; cf. Benjamin v. Gipson , 640 F. App'x 656, 659 (9th Cir. 2016) (rejecting ineffective assistance of counsel claim for failure to move to suppress first-time in-court identification because, given Perry , motion likely to have been unsuccessful).

See, e.g. , Lee v. Foster , 750 F.3d 687, 691-92 (7th Cir. 2014) ; United States v. Greene , 704 F.3d 298, 305-06 (4th Cir. 2013) ; United States v. Morgan , 248 F.Supp.3d 208, 211-15 (D.D.C. 2017) ; State v. Dickson , 322 Conn. 410, 141 A.3d 810, 822-27 (2016) ; City of Billings v. Nolan , 385 Mont. 190, 383 P.3d 219, 224-25 (2016).

We do not separately analyze our state constitutional due process guarantee because Garner has not argued that it should be interpreted any more broadly than its federal counterpart.

Because application of Biggers ' reliability test was not required for the in-court identifications at issue, we have no occasion to consider the additional factors Garner urges us to fold into that analysis.